PENNSYLVANIA NATIONAL
MUTUAL CASUALTY
INSURANCE COMPANY

v.

SHARPE IMAGES, INC. *et al.*

Civil Action No. 3:11-cv-

Exhibit to Complaint:

# B

STATE OF NORTH CAROLINA FILED THE GENERAL COURT OF JUSTICE
                                                    SUPERIOR COURT DIVISION
COUNTY OF MECKLENBURG NOV 12 PM 3:19      10-CVS-21114

MECKLENBURG CO.. C.S.C.

CAROLINAS AGC, INC. and                    )
EUCLID GROUP, INC.      BY                 )
                                           )
        Plaintiffs,                        )
                                           )
                                           )   **VERIFIED AMENDED**
v.                                         )   **COMPLAINT AND MOTION**
                                           )   **FOR PRELIMINARY**
GOODRICH HENDRY LLC,                       )   **INJUNCTION**
SHARPE IMAGES, INC., NEXTPLANS, LLC,       )
and ASSOCIATED BUILDERS AND                )   JURY TRIAL DEMANDED
CONTRACTORS OF THE CAROLINAS               )
                                           )
        Defendant(s).                      )

Plaintiff, Carolinas AGC, Inc. and Euclid Group, Inc. (collectively, "CAGC" or "Plaintiffs"), complaining of the Defendants, Goodrich Hendry LLC ("Goodrich Hendry"), Sharpe Images, Inc. ("Sharpe Images"), NextPlans, LLC ("NextPlans"), and Associated Builders and Contractors of the Carolinas ("ABCC") (collectively "Defendants"), alleges and says that:

## NATURE OF THE ACTION

1. Since its founding in 1920, CAGC has, through its considerable effort and expenditure of resources, built an exemplary reputation with the greater construction industry and its trade association members throughout the Carolinas, providing its members with leads, vital information on projects, plans, specifications and addenda on thousands of construction projects in North and South Carolina. In 2006, CAGC developed an online service, called IBuild®, to bring to its members the opportunity to access this project information and documents over the internet from a database created and maintained by CAGC. Through CAGC's expenditure of considerable resources and effort, CAGC's IBuild® has become a substantial component of its business and an extraordinary resource for its members.

2.     In January 2009, CAGC's main competitor in the Carolinas, ABCC, in partnership with Sharpe Images and NextPlans, launched a website database — ABC NextPlans — - providing leads and project information and documents regarding building projects in the Carolinas. Rather than investing the substantial resources and time that CAGC has invested in creating and growing IBuild®, Defendants have executed a plan to simply steal the information from CAGC to build up ABC NextPlans content quickly and increase ABCC's membership and non-dues income to the financial benefit of all Defendants. Simply put, Defendants have engaged in a calculated scheme involving unfair competition and deceptive acts or practices, the theft of CAGC's trade secrets, and the use of a promotional scheme founded on false and misleading statements about ABCC and CAGC's business, all in an effort to derive revenue from CAGC's actual or potential customers and harm CAGC's business. Defendants' actions unethically and unfairly accelerated the business and operations of ABCC, Sharpe Images and NextPlans, by virtue of CAGC's time, skill and funding, depriving CAGC of the benefits of its ownership in IBuild® and its content and causing substantial harm to CAGC and its business, including the loss of actual or potential memberships and revenue, including non-dues income, and to CAGC's ability to provide important services to the construction industry in the Carolinas.

## THE PARTIES

3.     Carolinas AGC, Inc. is a not for profit corporation organized under the laws of the State of North Carolina. CAGC maintains a principal place of business at 1100 Euclid Avenue, Charlotte, North Carolina.

4.     Euclid Group, Inc. is a corporation organized under the laws of the State of North Carolina and maintaining a principal place of business at 1100 Euclid Avenue, Charlotte, North Carolina. Euclid Group, Inc. is a wholly owned subsidiary of Carolinas AGC, Inc.

2

5. Upon information and belief, Goodrich Hendry is a limited liability company formed under the laws of the State of North Carolina with a principal place of residence at 9726 Kings Parade Blvd., Charlotte, North Carolina. Upon further information and belief, Marilyn Goodrich-Hendry (also known as Marilyn Goodrich) is an owner of Goodrich Hendry and, from 2007 to 2009, was the Chief Executive Officer of Sharpe Images.

6. Upon information and belief, Sharpe Images is a corporation incorporated under the laws of the State of North Carolina. Sharpe Images does business at offices located at 4832 Dwight Evans Road, Charlotte, North Carolina, 2640 Willard Dairy Road, High Point, North Carolina, 1020 Burke Street, Winston Salem, North Carolina and 5605 Chapel Hill Rd., Raleigh, North Carolina.

7. Upon information and belief, NextPlans is a limited liability company formed under the laws of the State of North Carolina with a business address of 1020 Burke Street, Winston Salem, North Carolina. Upon information and belief, NextPlans is an affiliated company of Sharpe Images and maintains an ownership interest in and control over ABC NextPlans.

8. Upon information and belief, ABCC is a not for profit corporation incorporated under the laws of the State of North Carolina with a principal office located at 2101 Sardis Road North, Suite 220, Charlotte, North Carolina.

9. This Court has jurisdiction over the parties pursuant to N.C. Gen. Stat. § 1-75.4 and other applicable statutes.

10. Venue is proper pursuant to N.C. Gen. Stat. § 1-82 and other applicable statutes.

## MATERIAL FACTS

### Overview of CAGC's Business

11.     CAGC is the largest construction trade association in North Carolina and South Carolina. Formed in 1920, CAGC provides important services and information to the construction industry and to its membership, consisting of contractors, subcontractors (also referred to as specialty contractors) and other suppliers of services and products in building, highway and utility construction.     CAGC fosters connections between contractors, subcontractors, architects, engineers and owners in the Carolinas, and provides to its members information and services related to building, highway and utility construction to help its members grow their businesses.

12.     As part of its standard membership dues, CAGC provides its members leads and information (including project names, classifications and facility types, location, job descriptions, bid date, and project owner) on hundreds of public and private projects in North Carolina and South Carolina through a database that CAGC has developed and maintains on its IBuild® website (the "IBuild® website"). CAGC also provides its members the ability to search the IBuild® website for projects that are appropriate to the member's business or needs. For example, CAGC members can limit their search of the IBuild® website by location, by type of facility or classification. The CAGC member's or prospective member's use of the IBuild® website and its content is subject to the terms and conditions of use set forth by CAGC and agreed to by such member or prospective member prior to gaining access to IBuild® and its content.

13.     CAGC also provides other services to its members, including, daily project alerts, free online plan rooms for every general contractor that is a member of CAGC through IBuild®,

4

customized craft training, craft worker training and safety programs, and governmental and legislative lobbying.

14.     CAGC also provides its members an opportunity to upgrade their membership for an additional annual fee.  With this upgraded membership, CAGC members are permitted, subject to CAGC's terms of usage, to view, download and print online plans and specifications on IBuild® for hundreds of public and private bidding for building, highway and utility construction projects through CAGC's IBuild® Plans Online website.  CAGC obtains substantial financial benefit from its IBuild® Plans Online and enhanced membership which provides vital funding for CAGC's operations, including its services offered to the construction industry in the Carolinas.  CAGC's IBuild® website and content, including IBuild® Plans Online, are vital to the continued operation of CAGC's business and the services it provides to its members and the construction industry.

15.     CAGC expends substantial time, effort and financial resources to provide the construction industry and CAGC's members with exceptional service and an extraordinary membership experience, including through IBuild® and IBuild® Plans Online.  During periods relevant hereto, CAGC employed 19 full time and 4 part time employees who were responsible for (a) identifying new public and private bid projects, (b) obtaining from owners, architects, engineers and general contractors information, plans and specifications for those projects, (c) posting that information on line in a standardized format on CAGC's IBuild® website, (d) ensuring that plans and specifications are properly uploaded on IBuild®, (e) updating information regarding these public and private bid projects on the CAGC IBuild® website, and (f) uploading addenda for public and private bid projects on the IBuild® website.

16.     In order to provide the foregoing information, plans and specifications to its members, CAGC employees spend substantial time contacting contractors, owners, engineers,

5

architects and other leads in the construction industry throughout North Carolina and South Carolina, many of which result from close relationships developed by CAGC over years with such contractors, subcontractors, architects, engineers, owners or other sources. In some cases, CAGC is provided project plans and specs on an exclusive basis. These sources provide their plans to CAGC because they have developed strong relationships of trust with CAGC. CAGC's efforts in developing and updating these relationships and obtaining this information for its IBuild® website require the expenditure of substantial resources to fund this effort. As a result of this effort, CAGC's IBuild® website (including IBuild® Plans Online) and its content constitute a compilation of information that is unique and proprietary to CAGC ("CAGC's proprietary information and trade secrets").

17.     Through the efforts described above, CAGC has also built an exceptional reputation with its membership, general contractors, subcontractors, architects and others suppliers in the construction industry in the Carolinas. By virtue of CAGC's reputation, contractors, subcontractors, architects, engineers and owners repose trust and confidence in CAGC that information on public and private projects that they provide to CAGC will be posted accurately for CAGC membership use, and plans, specifications and addenda will be uploaded on CAGC's IBuild® website for use by CAGC's membership. Upon information and belief, in some cases, architects will give a specific, unique number or designation to their plans when provided to CAGC for uploading to permit them to track the dissemination of those plans. These architects repose trust in CAGC that their plans will be handled appropriately by CAGC and CAGC's ability to obtain plans from architects and others in the future is dependent upon maintaining this level of trust.

18.     In order to protect its valuable IBuild® website and content, CAGC has enacted certain measures to protect its IBuild® website and content from unauthorized access or use.

6

Among other steps taken, CAGC requires each of its users to agree to terms of access and use of the IBuild® website and content prior to their being permitted access to IBuild®.

Defendants' Unauthorized Access to CAGC's Proprietary Information and Trade Secrets

19. ABCC is CAGC's largest trade association competitor in North Carolina and South Carolina.

20. ABCC, upon information and belief, is a not for profit trade association that engages in lobbying and provides education, training and information about public and private bidding building projects to its members in North Carolina and South Carolina. ABCC is a local chapter of the national organization, Associated Builders & Contractors.

21. In or about January 2009, ABCC launched an online posting of building construction projects on its website which is referred to as "ABC NextPlans." ABCC is a competitor of CAGC and AGC NextPlans competes with CAGC's IBuild® website.

22. Upon information and belief, ABCC NextPlans is an online service that provides ABCC members with the ability to search a database for public and private building projects, daily updates on projects and project leads. ABCC members can also upgrade their membership and, under ABCC's Enhanced Membership, search the NextPlans database for projects in North Carolina and South Carolina, and access, download and print plans, specifications and addenda for these projects. ABCC prices their Enhanced Membership at an annual rate of $800.00.

23. Upon information and belief, ABCC entered into a partnership with Sharpe Images and NextPlans for the development, operation and marketing of ABC NextPlans. Further, upon information and belief, Defendants entered into a plan and scheme to develop and expand ABC NextPlans' content by taking, through unauthorized and illegal means, including through Goodrich Hendry, proprietary content from CAGC's IBuild® website. ABC NextPlans

7

is supported by Sharpe Images and NextPlans and Sharpe Images, NextPlans and Goodrich Hendry are agents or partners of ABCC in matters alleged herein.

24.　Goodrich Hendry became a member of CAGC in April 2008. On March 31, 2008, Marilyn Goodrich-Hendry, as President of Goodrich Hendry, submitted an application for membership to CAGC and its IBuild® website, including IBuild® Plans Online. In that application, Goodrich Hendry identified her firm as minority owned providing products or services in fabrics. Since becoming a member of CAGC, Goodrich Hendry has represented in CAGC's member's listing that its business is "fabrics." At the time, Goodrich Hendry submitted its application to CAGC and updated its membership listing, CAGC accepted Goodrich Hendry's representations as truthful. CAGC has recently learned that Goodrich Hendry's representations in the membership application and online member listing were false. Unbeknown to CAGC at the time, Goodrich Hendry is not a legitimate "fabrics" business but is instead an agent of Sharpe Images, NextPlans and ABCC and a conduit of CAGC's proprietary information and trade secrets.

25.　Goodrich Hendry has maintained an enhanced membership with CAGC, with the ability to search, access and download drawings, specifications, addenda and other information from IBuild® Plans Online consistent with CAGC's terms of usage, since 2008.

26.　As part of its initial membership, Goodrich Hendry was provided a copy of CAGC's IBuild® Access User Agreement, which sets forth the conditions and terms of use and access by CAGC members or prospective members to the IBuild® website and its content. All CAGC members, or prospective members, are presented with CAGC's Access User Agreement ("User Agreement") which they must accept to gain membership and access to the IBuild® website and its content, including IBuild® Plans Online. CAGC uses the User Agreement as a

8

means to protect its proprietary information and trade secrets contained in the IBuild® website and its content.

27.     CAGC's User Agreement places restrictions on access to CAGC's IBuild® website and use of its content, including the restriction that the IBuild® content cannot be used in any manner "that is competitive with EUCLID's or its Affiliate(s) distribution of the Content." The User Agreement provides in part:

> Subject to compliance with each of the terms of this Agreement, EUCLID agrees to permit Access User to access and use the Site on a limited, revocable, non-exclusive, non-assignable, non-transferable basis solely for the purpose of obtaining Content for facilitating the bidding process and, if selected as the winning bidder, for completing the construction project. Use of the Content is restricted solely to employees for the Access User. Each authorized employee may procure a unique username and password through www.cagc.org. In addition to and notwithstanding anything to the contrary herein, the Content may not in any event be used or be permitted to be used in any manner that is competitive with EUCLID's or its Affiliate(s) distribution of the Content. Access User may retrieve, view, download and print the Content. (emphasis added).

28.     CAGC's User Agreement further requires the member or prospective member's acknowledgment prior to being granted access to the IBuild® website or content that the website and content are the sole property of CAGC:

> Access user acknowledges that the Site or any portion thereof, including associated report formats, screen displays, and menu features, and all derivative works are owned by or licensed to EUCLID or its Affiliate(s). The Site or any portion thereof and all copies, versions, and derivative works of the Site or any portion thereof shall remain the sole property of EUCLID or its Affiliate(s) and/or its or their licensors. Access User shall not decompile or otherwise reverse engineer or decode the Applications nor make or permit anyone else to make any copies of the Site or any portion thereof, except as necessary in connection with its authorized use of the Site. Access User shall not allow any third party to access or use the Content or the Site or any portion thereof. Access User shall not take or refrain from taking, directly or indirectly, any action that may in any way lead to the unauthorized dissemination, reproduction, or use of Content or the Site or any portion thereof. (emphasis added).

29.     Goodrich Hendry accepted the terms of the User Agreement on April 9, 2008.

30.    Since April 2008, Goodrich Hendry has accessed and downloaded from the IBuild® website over 348,000 documents (plans, specifications and addenda) becoming the single largest downloader of the IBuild® website. Goodrich Hendry has downloaded more documents from CAGC's IBuild® website than any other entity, greatly surpassing the number of downloads from the IBuild® website by others who have been members of CAGC for periods of time much longer than Goodrich Hendry's membership with CAGC. In most cases, Goodrich Hendry has downloaded over three times as many documents from the IBuild® website than other CAGC members.

31.    Upon information and belief, Goodrich Hendry, acting as an agent of Sharpe Images, NextPlans and ABCC, has, in violation of the terms of the User Agreement, downloaded and copied plans, specifications, addenda and other content from the IBuild® website and provided such content and information to Sharpe Images, NextPlans and ABCC and/or has made Goodrich Hendry's password and account available to persons at Sharpe Images, who have, acting as Defendants' agent, accessed, downloaded and copied plans, specifications, addenda and other content from the IBuild® website for use on ABC NextPlans by Defendants. Sharpe Images, NextPlans and ABCC, upon receipt of the CAGC IBuild® content and information from Goodrich Hendry and/or other currently unknown co-conspirators, posted such content and information on ABC NextPlans, knowing such content and information was derived from CAGC's IBuild® website and proprietary to CAGC.

32.    Upon information and belief, Defendants have obtained financial gain and benefit as a result of the conduct alleged herein, including without limitation, receiving payments that resulted from membership dues for ABCC members that would otherwise have joined CAGC or upgraded their membership, and from CAGC members that did not renew their membership but instead joined ABCC, due to the improper conduct of the Defendants alleged herein.

33.     Recently, CAGC was informed that a former employee of Sharpe Images had questioned whether ABCC was using content taken from CAGC's IBuild® website in ABC NextPlans. Upon information and belief, the former Sharpe Images employee raised this concern with Sharpe Images and ABCC and despite that notification, Sharpe Images and ABCC have continued their unlawful scheme and conduct alleged herein.

34.     Sharpe Images, NextPlans and ABCC have, upon information and belief, continued, either by themselves or through their agents, including Goodrich Hendry, to misappropriate content taken from CAGC's IBuild® website for use in ABCC's NextPlans. Among other things, Defendants have continued to access, download, reproduce, disseminate and use content taken from CAGC's IBuild® website in violation of the terms of the User Agreement and CAGC's proprietary ownership of that content. CAGC has confirmed that on at least 24 separate occasions, ABCC, NextPlans and Sharpe Images have posted to the ABC NextPlans website content from the CAGC IBuild® website.

35.     Goodrich Hendry executed a new User Agreement with CAGC and continued to access, disseminate, download, copy and use information and content from the IBuild® website, or, upon information and belief, make Goodrich Hendry's password and CAGC IBuild® account available to Sharpe Images and NextPlans for Defendants to access, download, disseminate, copy and use CAGC IBuild® content on ABC NextPlans, in violation of the terms and conditions of CAGC's User Agreements and in violation of CAGC's rights of ownership in such information and content.

36.     Following discovery and investigation of Defendants' conduct, CAGC has denied Goodrich Hendry access to the IBuild® website.

37.     As a direct result of the improper and unlawful conduct of the Defendants alleged herein, Defendants have increased the size of ABC NextPlans, increasing the number of

11

documents contained on ABC NextPlans to at least 2,213,488, increasing the number of projects contained on ABC NextPlans to at least 2,200, and increasing the number of addenda contained on ABC NextPlans to at least 19,000 in 2009 alone.

38. In an attempt to profit from the unlawful and improper conduct of the Defendants alleged herein, including without limitation, the misappropriation by Defendants of CAGC's proprietary content from the IBuild® website, ABCC, in or about August and September 2010, embarked on a false and misleading sales and marketing campaign which has targeted actual members of CAGC. In this sales and marketing campaign, ABCC falsely and misleadingly states that ABC NextPlans is "the fastest growing construction plan room in the Carolinas." In addition, during CAGC's approximate three month annual renewal period, ABCC "warns" CAGC members from renewing their annual plan room membership of $2,000 and making a "mistake" by renewing with "the Other Guy," a reference intended by ABCC and understood to mean CAGC. ABCC also falsely represents that CAGC's upgraded membership cost is $2,000 and that obtaining a membership with ABCC instead would save the CAGC member $1,200. Copies of ABCC's promotional materials are attached hereto as Exhibit A.

39. ABCC's foregoing statements, made knowingly by ABCC in the promotional materials, are false and misleading in that ABCC fails to state that ABC NextPlans' growth has resulted from Defendants' unlawful and improper misappropriation of content from CAGC's IBuild® website, that CAGC's upgraded membership rate is less than $2,000 and that ABCC has priced its upgraded membership rate substantially less than CAGC's due to the fact that ABCC obtains its content for ABC NextPlans from CAGC's IBuild® website, resulting in significantly less costs to ABCC.

40. ABCC has also made false and misleading statements in its website concerning ABC NextPlans. ABCC has knowingly misrepresented the size of ABC NextPlans, claiming

12

that ABC NextPlans in 2009 had 2,213,488 documents and 2,200 projects, and that ABC NextPlans is the "Carolinas #1 source for building project information." ABCC's foregoing statements in its website are false and misleading as they suggest that ABC NextPlans was created through legitimate and proper means, which it was not, and that ABC NextPlans' content was derived legitimately by ABCC, which it was not. ABCC's statements in its website are false and misleading in that they fail to state that ABC NextPlans' content was derived from CAGC's IBuild® website, constitutes CAGC IBuild® content and is CAGC's property.

41. Sharpe Images website hyperlinks to ABCC's NextPlans website and uses that website as its content for ABC NextPlans. Accordingly, the foregoing false and misleading statements made by ABCC in its website are attributed to Sharpe Images. Sharpe Images, with its direct involvement in the unlawful and improper conduct and scheme alleged herein, knew the statements made regarding the size of ABC NextPlans in ABCC's website page were false and misleading when made, and adopted such statements.

42. ABCC, Sharpe Images and NextPlans, by themselves or through their agents, including Goodrich Hendry, have developed ABC NextPlans, in substantial part, by improperly and unlawfully accessing, downloading, copying, disseminating and using proprietary information from CAGC's IBuild® website and content and placing such CAGC information and content on ABC NextPlans.

43. As a direct and proximate result of Defendants' unlawful and improper conduct alleged herein, Defendants have, upon information and belief, increased ABCC's membership, generating substantial membership revenue. ABCC has grown its membership and obtained additional revenues through Defendants' improper and unlawful conduct alleged herein which has directly and proximately caused harm to CAGC, including, without limitation, through the loss of CAGC members and revenue to ABCC, the loss and diversion of prospective CAGC

members and membership dues to ABCC, the misappropriation of CAGC proprietary content on its IBuild® website and the damage sustained to CAGC's overall reputation, goodwill and its relationship with architects, engineers, owners, contractors, subcontractors and others in the construction industry. Upon information and belief, as a result of Defendants' conduct, a number of CAGC members have not renewed their upgraded membership agreements with CAGC and instead have entered into upgraded memberships with ABCC. Defendants' improper and unlawful conduct alleged herein also harms CAGC's ability to provide services to the construction industry in general in the future, as CAGC's continued viability depends upon the funding that it receives from its memberships, including its Enhanced Membership for IBuild® Plans Online.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract)
### (Against Goodrich Hendry Only)

44.     The allegations contained in paragraphs 1 through 43 are realleged and incorporated herein by reference.

45.     CAGC entered into valid and binding contracts with Goodrich Hendry with the execution of the User Agreements in 2008 and 2010. True and accurate copies of the User Agreements which Goodrich Hendry accepted in 2008 and 2010 are attached as Exhibit B and C, respectively.

46.     Goodrich Hendry has materially breached the terms of the User Agreements by, among other things, as alleged above (a) providing access to IBuild® website content to persons who are not employees of Goodrich Hendry, including without limitation Sharpe Images, NextPlans and ABCC, (b) using IBuild® website content for purposes not permitted by the User Agreement, including without limitation, by disclosing, disseminating, copying, using and/or downloading the IBuild® content for use by Sharpe Images, NextPlans and ABCC in ABC

14

NextPlans, (c) using or permitting the use of IBuild® website content in a manner that is competitive with CAGC's distribution of this content, including without limitation, providing the IBuild® content to Sharpe Images, NextPlans and ABCC for use in ABC NextPlans, (d) making copies or permitting others, including Sharpe Images, NextPlans and ABCC, to make copies of the IBuild® website or its content for purposes not permitted by the User Agreement, including without limitation, as part of ABC NextPlans, (e) permitting a third party, including without limitation Sharpe Images, NextPlans and ABCC, to use the IBuild® website, its content or portion thereof, and (f) taking or refraining from taking, directly or indirectly, action leading to the unauthorized dissemination, reproduction or use of the IBuild® website content or the IBuild® website or any portion thereof.

47.   As a direct and proximate result of Goodrich Hendry's breaches of the User Agreements, CAGC has been damaged in an amount in excess of $10,000.00 and unless enjoined, will continue to be harmed by Goodrich Hendry in the future, causing immediate and irreparable injury unless enjoined. Accordingly, in addition to damages proximately caused by Goodrich Hendry's breaches of the User Agreements, CAGC is entitled to injunctive relief to prevent Goodrich Hendry and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order, including without limitation, Marilyn Goodrich-Hendry, from (a) accessing CAGC's IBuild® website or its content; (b) misappropriating CAGC's proprietary information and trade secrets; and (c) using, disclosing or copying any of CAGC's proprietary information and trade secrets already in the possession of Defendants, including in ABC NextPlans. Such an injunction, for the reasons stated herein, is in the public interest, as reflected by the legislature's enactment of the North Carolina Trade Secrets Protection Act and the Unfair and Deceptive Trade Practices Act, and the balance of hardships weighs in favor of granting an injunction as it is unlawful to

15

misappropriate proprietary information and trade secrets and engage in unfair and unethical conduct, as alleged herein.

## SECOND CLAIM FOR RELIEF
### (Fraud – All Defendants)

48.     The allegations contained in paragraphs 1 through 47 are realleged and incorporated herein by reference.

49.     At all relevant times, Goodrich Hendry acted as an agent of Sharpe Images, NextPlans and ABCC.

50.     Goodrich Hendry, and Sharpe Images, NextPlans and ABCC through it, represented to CAGC, among other things, that the IBuild® website and its content was proprietary to CAGC, that Goodrich Hendry would use the IBuild® website and its content for purposes permitted under the User Agreement only and that Goodrich Hendry would not disclose the IBuild® website or its content to anyone outside Goodrich Hendry and would not use or permit to be used such content in any manner that is competitive with CAGC.

51.     Unbeknown to CAGC at the time, Goodrich Hendry (and perhaps other unknown co-conspirators) was in fact an agent of Sharpe Images, NextPlans and ABCC and had agreed to provide them access to the proprietary content of CAGC from the IBuild® website for the benefit of the Defendants and contrary to the terms of the User Agreement and the representations made by Goodrich Hendry in that agreement.

52.     If CAGC had known of Goodrich Hendry's affiliation with Sharpe Images, NextPlans and ABCC, and had known of the agreement among the Defendants for ABCC to populate ABC NextPlans by taking proprietary content from CAGC's IBuild® website through Goodrich Hendry and other presently unknown agents, CAGC would not have permitted Goodrich Hendry to purchase enhanced membership or to have access to CAGC's IBuild® website and content.

53.   Defendants intended CAGC to rely on the misrepresentations made through Goodrich Hendry, and perhaps other unknown agents, as alleged herein.

54.   CAGC was justified in relying on Defendants' misrepresentations through Goodrich Hendry, as alleged herein.

55.   CAGC has suffered damages as a proximate result of Defendants' misrepresentations through Goodrich Hendry, and perhaps other unknown agents, as alleged herein, in an amount in excess of $10,000.00.

56.   In addition, Defendants, by their actions, actively and wrongfully concealed from CAGC material facts relating to their misconduct, which prevented CAGC from discovering its claims against Defendants until recently.   CAGC is unable to determine the full extent of Defendants' misappropriation and the identity of all agents of Defendants used to obtain proprietary information and content from CAGC for ABC NextPlans.

57.   CAGC is entitled to recover its damages suffered as a proximate cause of Defendants' misrepresentations through Goodrich Hendry, and perhaps others, as alleged herein, at an amount to be proven at trial.

58.   CAGC is also entitled to recover punitive damages against Defendants, as they acted willfully, wantonly and maliciously in making the misrepresentations and misappropriating CAGC's proprietary information and trade secrets.

59.   In addition, CAGC does not have an adequate remedy at law for Defendants' unauthorized access to, copying and use of CAGC's proprietary information and trade secrets and the harm caused to CAGC's reputation and relationships with the construction industry.

60.   CAGC will suffer immediate and irreparable harm if Defendants are permitted continued access to CAGC's IBuild® website and its content and continued use of the CAGC proprietary information and trade secrets already misappropriated by Defendants.

17

61.    The balance of hardships weighs in favor of a preliminary and permanent injunction preventing Defendants, directly or indirectly, from accessing CAGC's IBuild® website or content, and from using CAGC proprietary information and trade secrets. Defendants will not be prejudiced by such an injunction, because it is unlawful for Defendants to have misappropriated or accessed without authorization CAGC's proprietary information and trade secrets.

62.    The public interest will be advanced by a preliminary and permanent injunction. By enacting North Carolina's Trade Secrets Protection Act and Unfair and Deceptive Trade Practices Act, the legislature of this state has expressed the public interest of preventing misappropriation of trade secrets and proprietary information and unfair and unethical conduct of the type set forth herein.

63.    CAGC is entitled to a preliminary and permanent injunction preventing Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order, from (a) accessing CAGC's IBuild® website or its content without authorization; (b) misappropriating CAGC's proprietary information and trade secrets, including through the continued operation of ABC NextPlans; and (c) using, disclosing or copying any of CAGC's proprietary information and trade secrets already in the possession of Defendants, including in ABC NextPlans.

## THIRD CLAIM FOR RELIEF
### (Trade Secret Misappropriation – All Defendants)

64.     The allegations contained in paragraphs 1 through 63 are realleged and incorporated herein by reference.

65.     The compilation of information reflected on CAGC's IBuild® website and in its content, is unique and proprietary business and technical information of CAGC, and was compiled by CAGC through the expenditure of substantial resources, skill, time and money, as alleged above. As a result of this expenditure of skill, labor and money, CAGC has developed a unique compilation of information which is contained in its IBuild® website and content and which CAGC derives economic value through its licensing of this information to its members under, and subject to, the terms of the User Agreements. The proprietary compilation of information contained on IBuild® derives independent, actual or potential value from not being generally known or readily ascertainable to persons outside of CAGC or its members who are permitted access to IBuild® subject to the terms of the User Agreements.

66.     CAGC protects its proprietary information and trade secrets contained on IBuild® by, among other things, entering into User Agreements with its users which, among other things, prohibits (a) the use of the information and content contained on the IBuild® website, including the trade secrets, for any purpose other than permitted by the User Agreement, (b) the use of CAGC's proprietary information and trade secrets by anyone in competition with CAGC and (c) the unauthorized dissemination, reproduction or use of CAGC's trade secrets. CAGC has taken reasonable measures to protect its proprietary information and Trade Secrets from disclosure and improper use.

67.     As alleged herein, Defendants knowingly misappropriated CAGC's proprietary information and trade secrets through improper means, including through the unlawful conduct of Goodrich Hendry and Sharpe Images.

68.     Defendants' access to CAGC's proprietary information and trade secrets was unauthorized and in violation of the restrictions imposed by CAGC on its members, including Goodrich Hendry.

69.     As alleged herein, Defendants have used CAGC proprietary information and trade secrets to compete with CAGC and continue to be in possession of CAGC's proprietary information and trade secrets.

70.     CAGC has suffered damages as a proximate result of Defendants' misappropriation of CAGC's proprietary information and trade secrets in an amount in excess of $10,000.00 and is entitled to recover all such damages pursuant to N.C. Gen. Stat. §§ 66-152 through 157, and the common law, in an amount to be determined at trial.

71.     Defendants acted willfully, wrongfully, wantonly and maliciously in misappropriating CAGC's proprietary information and trade secrets, entitling CAGC to punitive damages against Defendants, in addition to its actual damages and attorneys' fees, pursuant to N.C. Gen. Stat. § 66-154 in an amount to be determined at trial.

72.     In addition, as alleged above, CAGC is entitled to the entry of a preliminary and permanent injunction, as Defendants conduct and actions have and will cause irreparable injury to CAGC, including without limitation, injury to its interest in its intellectual property and to CAGC's reputation and relationships in the greater construction industry. Accordingly, CAGC is entitled to a preliminary and permanent injunction preventing Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order, from (a) accessing CAGC's IBuild® website or

20

its content without authorization; (b) misappropriating CAGC's proprietary information and trade secrets, including through the continued operation of ABC NextPlans; and (c) using, disclosing or copying any of CAGC's proprietary information and trade secrets already in the possession of Defendants, including in ABC NextPlans, and requiring that Defendants return to CAGC all of its proprietary information and trade secrets.

## FOURTH CLAIM FOR RELIEF
### (Unfair Trade Practices – All Defendants)

73. The allegations contained in paragraphs 1 through 72 are realleged and incorporated herein by reference.

74. The actions of the Defendants described above, including without limitation, (a) the scheme and plan to build ABC NextPlans, and derive revenue from membership and other dues obtained from members accessing ABC NextPlans, by stealing proprietary content and trade secrets of CAGC, (b) the misappropriation of CAGC proprietary information and trade secrets, and (c) the false and misleading statements made by ABCC and Sharpe Images in their websites, all were unlawful, immoral, unethical, and in violation of the ethos of the marketplace.

75. Additionally, ABCC engaged in a false and misleading promotional campaign directed at CAGC members described above, including without limitation, making false representations of material fact, or concealed material facts, concerning ABC NextPlans to actual and prospective members of CAGC and ABCC, and to others in the industry critical to CAGC's success, which ABCC intended to deceive such persons and harm CAGC and its reputation and goodwill, including the following statements that were false or omitted material facts when made: (a) that ABC NextPlans in 2009 had 2,213,488 documents and 2,200 projects, which statement was false as it did not disclose that many of those documents and projects were misappropriated from CAGC's IBuild® website and proprietary to CAGC; (b) that ABCC was the "Carolinas #1 source for building project information," which statement was false as it did

21

not disclose that ABCC, and the remaining Defendants, misappropriated CAGC's proprietary information and trade secrets for their improper and unlawful use at ABCC and ABC NextPlans; (c) that ABC NextPlans is the "fastest growing construction plan room in the Carolinas," which statement was false as it did not disclose that ABC NextPlans planning room grew due to Defendants' misappropriation of CAGC's proprietary information and trade secrets; and (d) that CAGC's upgraded membership cost was $2,000 and that CAGC members would make a "mistake" in renewing their CAGC membership, which statement was false as it did not disclose that CAGC's true and correct membership fee and that ABCC's membership fee is lower due to its lower costs resulting from Defendants' misappropriating CAGC's proprietary information and trade secrets and free riding off of CAGC's hard work (the "Misrepresentations"). The Misrepresentations and misleading promotional campaign by ABCC were unlawful, immoral, unethical, and in violation of the ethos of the marketplace.

76.    The actions of the Defendants described herein were in or affecting commerce.

77.    The actions of the Defendants as described herein constitute unfair competition and deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1. Among other things, Defendants have: (a) competed unfairly and unethically with CAGC through their unauthorized access, use, reproduction and dissemination of proprietary content and trade secrets on CAGC's IBuild® website which Defendants have used in ABC NextPlans and disclosed to ABCC members for financial gain; (b) competed unfairly and unethically by misappropriating CAGC's proprietary information and trade secrets to falsely inflate the number of projects and documents on ABC NextPlans to increase ABCC's membership and derive additional membership dues and (c) competed unfairly and unethically with CAGC by knowingly making false statements regarding ABC NextPlans in their websites and about ABCC and CAGC in ABCC's promotional materials.

22

78.     CAGC has sustained damage, including to its reputation and goodwill, directly and proximately caused by Defendants' unfair and deceptive trade practices as described herein in am amount in excess of $10,000.00.

79.     CAGC is entitled to and seeks recovery from Defendants all damages, including lost profits, caused by Defendants' actions in violation of N.C. Gen. Stat. § 75-1.1 and § 75-16 and to have such damages trebled. CAGC is also entitled to and seeks recovery of its reasonable attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

80.     In addition, CAGC does not have an adequate remedy at law for Defendants' unethical, immoral and illegal conduct, including their unauthorized access to, copying and use of CAGC's proprietary information and trade secrets and intentional use of misrepresentations.

81.     CAGC will suffer immediate and irreparable harm if Defendants are permitted continued access to CAGC's IBuild® website and its content and continued use of the CAGC proprietary information and trade secrets already misappropriated by Defendants through continued operation of ABC NextPlans, including without limitation, harm to CAGC's reputation, its relationship with the construction industry and its ability to serve the grater construction industry in the future.

82.     CAGC will suffer immediate and irreparable harm if Defendant is permitted to continue to make the Misrepresentations, or other misrepresentations regarding CAGC, its business or ABC NextPlans, without disclosing Defendants' illegal and unethical behavior.

83.     The balance of hardships weighs in favor of a preliminary and permanent injunction preventing Defendants, directly or indirectly, from accessing CAGC's IBuild® website or content, from using CAGC proprietary information and trade secrets, and from continuing to make the Misrepresentations, or other misrepresentations regarding CAGC, its business or ABC NextPlans, without disclosing Defendants' illegal and unethical behavior.

Defendants will not be prejudiced by such an injunction, because it is unlawful for Defendants to have misappropriated or accessed without authorization CAGC's proprietary information and trade secrets and Defendant has no protectable interest in making the Misrepresentations and such Misrepresentations cause CAGC substantial harm, including to its reputation.

84. The public interest will be advanced by a preliminary and permanent injunction. By enacting North Carolina's Unfair and Deceptive Trade Practices Act, the legislature of this state has expressed the public interest of preventing misappropriation of trade secrets and proprietary information and unfair and unethical conduct of the type set forth herein.

85. CAGC is entitled to a preliminary and permanent injunction preventing Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order, from (a) accessing CAGC's IBuild® website or its content without authorization; (b) misappropriating CAGC's proprietary information and trade secrets, including through the continued operation of ABC NextPlans; (c) using, disclosing or copying any of CAGC's proprietary information and trade secrets already in the possession of Defendants, including in ABC NextPlans; (d) continuing to make the Misrepresentations, and (e) making other materially false statements regarding CAGC, its business or ABC NextPlans, without disclosing Defendants' illegal and unethical behavior alleged herein.

## FIFTH CLAIM FOR RELIEF
### (Quantum Meruit – All Defendants)

86. The allegations contained in paragraphs 1 through 85 are realleged and incorporated herein by reference.

87. Defendants have misappropriated CAGC's proprietary information and trade secrets through the conduct alleged herein for their own commercial benefit, which has, among other things, (a) increased the size of ABC NextPlans, making it appear more substantial and

24

credible than it is, (b) increased ABCC's membership, (c) diverted CAGC actual or potential members to ABCC rather than to obtain or renew membership with CAGC, and (d) upon information and belief, resulted in payments or other compensation to Sharpe Images, NextPlans and/or Goodrich Hendry.

88.    Defendants have realized said benefits of the misappropriation of CAGC's proprietary information and trade secrets.

89.    Defendants have not compensated CAGC for CAGC's proprietary information and trade secrets that Defendants misappropriated and it is unfair and unjust for Defendants to retain the benefits and enrichment obtained at CAGC's expense through Defendants' misappropriation. CAGC is entitled to full compensation by Defendants for such unjust enrichment, including disgorgement of all profits obtained by Defendants ABCC, Sharpe Images and NextPlans from such acts.

## SIXTH CLAIM FOR RELIEF
### (Interference with Prospective Economic Advantage – All Defendants)

90.    The allegations contained in paragraphs 1 through 89 are realleged and incorporated herein by reference.

91.    Since its formation in 1920, CAGC has built a membership of over 2,500 firms in North Carolina and South Carolina. Defendants, through their intentional and malicious acts and conduct, including their misappropriation of CAGC's proprietary information and trade secrets and use of a false and misleading marketing and promotional campaign, have intentionally induced prospective and actual members of CAGC to refrain from obtaining or renewing standard or enhanced membership with CAGC to join ABCC and ABC NextPlans.

92.    But for Defendants' actions, CAGC would have obtained renewed or new memberships with such actual or prospective members, including enhanced membership for CAGC's IBuild® Plans Online.

93.    Defendants have acted unlawfully and without justification.

94.    Defendants' conduct has directly and proximately caused CAGC to suffer damage in an amount in excess of $10,000.00. CAGC is entitled to recover all damages directly and proximately caused by Defendants' aforementioned conduct, including lost profits, as may be proven at trial.

95.    CAGC is also entitled to recover punitive damages against the Defendants, as they acted willfully, wantonly and maliciously in their calculated actions to induce prospective and actual members of CAGC to refrain from obtaining or renewing membership with CAGC in favor of ABCC.

## SEVENTH CLAIM FOR RELIEF
### (Wrongful Acts Committed Pursuant to a Conspiracy – All Defendants)

96.    The allegations contained in paragraphs 1 through 95 are realleged and incorporated herein by reference.

97.    Defendants have conspired to interfere with CAGC's business expectancies, relationships and prospective relationships with its members and the construction industry.

98.    Upon information and belief, Defendants have conspired with each other, and other currently unknown co-conspirators, to, among other things, misappropriate CAGC's proprietary information and trade secrets for their benefit and gain in order to build ABC NextPlans, increase the membership of ABCC, decrease the membership of and otherwise harm CAGC, and obtain profits and benefits from such unlawful conduct.

99.    Defendants' wrongful and unlawful actions have harmed CAGC. Therefore, CAGC is entitled to recover all damages directly and proximately caused by Defendants' aforementioned conduct, including lost profits. Defendants' aforementioned conduct has also caused severe and irreparable harm, and CAGC is entitled to injunctive relief to prevent Defendants from continuing to use or disclose CAGC proprietary information and trade secrets

26

misappropriated by Defendants from CAGC, as an award of damages will not fully compensate CAGC for the continuing irreparable harm caused by Defendants to it.

100. CAGC is also entitled to recover punitive damages against the Defendants, as the Defendants acted willfully, wantonly and maliciously in their conspiracy to interfere with CAGC's business relationships and prospective economic advantage and to misappropriate CAGC's proprietary information and trade secrets for their benefit and gain.

WHEREFORE Plaintiff respectfully prays that:

1. The Court enter an order pursuant to Rule 65 of the North Carolina Rules of Civil Procedure and N.C. Gen. Stat. §66-154 et seq. preliminary enjoining until the completion of the trial in the matter:

a. On the First Claim for Relief, Defendant Goodrich Hendry and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order, including without limitation, Marilyn Goodrich-Hendry, from (a) accessing CAGC's IBuild® website or its content; (b) misappropriating CAGC's proprietary information and trade secrets; and (c) using, disclosing or copying any of CAGC's proprietary information and trade secrets already in the possession of Defendants, including in ABC NextPlans.

b. On the Second, Third, Fourth and Seventh Claims for Relief, Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order, from (a) accessing CAGC's IBuild® website or its content without authorization; (b) misappropriating CAGC's proprietary information and trade secrets, including through the continued operation of ABC NextPlans; and (c) using, disclosing or copying any of CAGC's

27

proprietary information and trade secrets already in the possession of Defendants, including in ABC NextPlans.

c.     On the Fourth Claim for Relief, Defendant ABCC and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order, including Defendants Sharpe Images and NextPlans, from (a) continuing to make the Misrepresentations, and (b) making other materially false statements regarding CAGC, its business or ABC NextPlans, without disclosing Defendant's illegal and unethical behavior alleged herein.

2.     The Court enter an order pursuant to Rule 65 of the North Carolina Rules of Civil Procedure and N.C. Gen. Stat. §66-154 et. seq.:

a.     On the First Claim for Relief, Defendant Goodrich Hendry and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order, including without limitation, Marilyn Goodrich-Hendry, from (a) accessing CAGC's IBuild® website or its content; (b) misappropriating CAGC's proprietary information and trade secrets; and (c) using, disclosing or copying any of CAGC's proprietary information and trade secrets already in the possession of Defendants, including in ABC NextPlans.

b.     On the Second, Fourth and Seventh Claims for Relief, Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order, from (a) accessing CAGC's IBuild® website or its content without authorization; (b) misappropriating CAGC's proprietary information and trade secrets, including through the continued operation of ABC NextPlans; and (c) using, disclosing or copying any of CAGC's

proprietary information and trade secrets already in the possession of Defendants, including in ABC NextPlans.

c. On the Fourth Claim for Relief, Defendant ABCC and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order, including Defendants Sharpe Images and NextPlans, from (a) continuing to make the Misrepresentations, and (b) making other materially false statements regarding CAGC, its business or ABC NextPlans, without disclosing Defendant's illegal and unethical behavior alleged herein.

d. On the Third Claim for Relief, Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order, from (a) accessing CAGC's IBuild® website or its content without authorization; (b) misappropriating CAGC's proprietary information and trade secrets, including through the continued operation of ABC NextPlans; and (c) using, disclosing or copying any of CAGC's proprietary information and trade secrets already in the possession of Defendants, including in ABC NextPlans, and requiring that Defendants return to CAGC all of its proprietary information and trade secrets.

3. The Court enter judgment against Defendants individually on all Claims herein.

4. The Court enter judgment against Defendants in the amount of damages that may be proven at trial including punitive damages.

5. The Court treble the compensatory damages awarded with respect to the Fourth Claim for relief pursuant to N.C. Gen. Stat. §75-16.

6. The Court award the Plaintiff its attorney's fees pursuant to N.C. Gen. Stat. §75-16.1 and §66-154 et. seq. and applicable law.

7. The Court tax the costs of this action against the Defendants.

8.    For a trial by jury on all issues so triable.

9.    The Court grant the Plaintiff such other and further relief as it deems just and

appropriate.

This 12th day of November, 2010.

/s/Eric D. Welsh

Eric D. Welsh
N. C. Bar No. 29629
Sarah A. Fulton
N. C. Bar No. 38172
*Attorneys for Plaintiff*

**OF COUNSEL:**

**PARKER, POE, ADAMS & BERNSTEIN L.L.P.**
Three Wachovia Center
Suite 3000
401 South Tryon St.
Charlotte, North Carolina 28202
(704) 372-9000
(704) 334-4706

**STATE OF NORTH CAROLINA**

**VERIFICATION**

**COUNTY OF UNION**

Cynthia Mills, being first duly sworn, deposes and says that she is President and CEO of Carolinas AGC, Inc. and Euclid Group, Inc., and that she is authorized to make this oath on behalf of Carolinas AGC, Inc. and Euclid Group, Inc., that she has read the foregoing and attached Verified Amended Complaint and Motion for Preliminary Injunction; and that the same is true to her knowledge or from information provided to her by employees or agents of the plaintiffs, except those matters stated upon information and belief, which she believes to be true.

Carolinas AGC, Inc.
Euclid Group, Inc.

By: _____
Cynthia Mills, CAE, CMC

Sworn to and subscribed before me this
12th day of November, 2010.

_____
Notary Public

My Commission Expires: 5/8/2012

## CERTIFICATE OF SERVICE

This is to certify that the foregoing *Verified Amended Complaint and Motion for Preliminary Injunction* was served by first class mail and facsimile, and addressed as follows:

Matthew Bryant, Esq.
Hendrick & Bryant, LLP
723 Coliseum Drive, Suite 101
Winston-Salem, NC 27106
mbryant@hendricklawfirm.com
Tel: (336) 723-7200
Fax: (336) 723-7201

Kevin Parsons, Esq.
Smith, Parsons & Vickstrom PLLC
606 Piedmont Row Dr. S, Suite 150
Charlotte, NC 28287
Fax: (704) 557-9932

This is to certify that the foregoing *Verified Amended Complaint and Motion for Preliminary Injunction* was served by Federal Express and addressed as follows:

Marilyn Goodrich, Registered Agent
Goodrich Hendry LLC
9726 Kings Parade Blvd.
Charlotte, North Carolina 28273

This the 12th day of November, 2010.

_____
/s/ Eric D. Welsh
Eric D. Welsh
N. C. Bar No. 29629
**PARKER POE ADAMS & BERNSTEIN LLP**
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, North Carolina 28202
Telephone: (704) 372-9000
Facsimile: (704) 334-4706

# EXHIBIT A

## *BEFORE YOU CHOOSE...*

It's time to renew your Planroom subscription. Before you make your decision, check out
compare to your current provider.

**ANNUAL SUBSCRIPTION COST**
*ABCNEXTPLANS...$800.00*
*THE OTHER GUY...$2,000.00*

**COST PER BIDDING PROJECT**
*ABCNEXTPLANS...$7.69*
*THE OTHER GUY...$17.85*

**CURRENT BIDDING PROJECTS*** that are actually posted with Plans and Specs in the C;
**ABCNEXTPLANS...104**
*THE OTHER GUY...112*

*TRY ABCNEXTPLANS FREE...*CLICK HERE.

*\* as of 8/17/2010; numbers subject
Membership with the ABC Organization not required t*



If you no longer wish to receive these emails, please reply to this message with "Unsubscribe" in the subject line or simply click on the
following link: Unsubscribe

1020 Burke Street | Winston Salem NC 27101



Read the VerticalResponse marketing policy.

# WARNING!

## DO NOT PAY Next Month's $2,000 Plan Room Renewal Fee!

ABC Members Enhanced Membership wants to keep you from making a $1,200 mistake.

We're the fastest growing construction partners in the Carolinas and we're offering you 30 days worth of features and projects for **FREE** during the month of August. This is a NO TRY, No Obligation deal!

If you're looking to improve efficiencies, open new networking channels, or simply bid on a project, click here to sign-up for the free trial.

*Trial Runs 8/1 – 8/31*
*ABC Membership not required*



If you no longer wish to receive these emails, please reply to this message with "Unsubscribe" in the subject line or simply click on the following link: Unsubscribe

1020 Burke Street | Winston Salem NC 27101

Read the VerticalResponse marketing policy.



## LAST CHANCE TO AVOID A $1,200 MISTAKE...

It's time to renew your Planroom subscription. Before you make your decision, check out how we compare to your current provider.

ANNUAL SUBSCRIPTION COST
### ABCNEXTPLANS...$800.00
THE OTHER GUY...$2,000.00

CANCEL FEE PER SINGLE PROJECT
### ABCNEXTPLANS...$7.69
THE OTHER GUY...$12.50

CURRENT UPCOMING PROJECTS that are actually posted with Plans and Specs in the Carolinas
### ABCNEXTPLANS...104
THE OTHER GUY...48

## TRY ABCNEXTPLANS FREE...CLICK HERE.

*as of 8/17/2010; numbers subject to change
Membership with the ABC Organization not required for joining.




If you no longer wish to receive these emails, please reply to this message with "Unsubscribe" in the subject line or simply click on the following link: Unsubscribe

Sharpe Images
1020 Burke Street
Winston Salem, North Carolina 27101



Read the VerticalResponse marketing policy.

# EXHIBIT B

IBuild™
**ACCESS USER AGREEMENT**

This IBuild Access User Agreement (the "Agreement") is entered into by and between THE EUCLID GROUP, INC. ("EUCLID"), a subsidiary of Carolinas AGC, Inc., and the end-user of the Site (as defined below). YOUR USE OF SITE IS SUBJECT TO THE TERMS AND CONDITIONS SET FORTH BELOW. BY CLICKING THE **"ACCEPT"** BUTTON BELOW, YOU AGREE TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT. IF YOU DO NOT AGREE TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, CLICK THE **"DECLINE"** BUTTON BELOW.

This Agreement provides the terms and conditions pursuant to which Access User (as defined below), for good and valuable consideration the receipt and sufficiency of which are acknowledged, is permitted to access and use certain computer and information systems maintained by or on behalf of EUCLID or its Affiliates.

1.  Definitions. Defined terms used herein shall have the meanings ascribed to them in this Section 1.

    "Access User" or "You" means you individually and your employer.

    "Carolinas AGC" or "CAGC" means Carolinas Associated General Contractors, Inc.

    "Affiliate(s)" means EUCLID's corporate parent (CAGC), and any now existing or future direct or indirect subsidiaries or affiliates of CAGC.

    "Application" means the software product(s) residing on the Site through which Access User can utilize the Site.

    "Content" means the Drawings, Marks and all other information, including but not limited to project location, project details and bid date, which reside on the Site and other information provided via the Site.

    "Drawings" is defined as any plans, blueprints, drawings, documentation, specifications, and related design information available via the Site.

    "Owner" is defined as the Person that holds legal title and rights to the Drawings.

    "Person" means any individual, corporation, limited liability company, partnership, joint venture, association, joint stock company, trust, unincorporated organization or other legal entity.

    "Marks" means the marks, logos, service marks, trademarks and trade names appearing on the Site.

    "Site" means the web site known as IBuild site located at www.cagc.org, and includes the Applications and the computer and network systems accessed by Access User for the purpose of viewing and obtaining Content.

2. LICENSE AND LICENSE RESTRICTIONS

2.1 Subject to compliance with each of the terms of this Agreement, EUCLID agrees to permit Access User to access and use the Site on a limited, revocable, non-exclusive, non-assignable, non-transferable basis solely for the purpose of obtaining Content for facilitating the bidding process and, if selected as the winning bidder, for completing the construction project. Use of the Content is restricted solely to employees of the Access User. Each authorized employee may procure a unique username and password through www.cagc.org. In addition to and notwithstanding anything to the contrary herein, the Content may not in any event be used or be permitted to be used in any manner that is competitive with EUCLID's or its Affiliate(s) distribution of the Content. Access User may retrieve, view, download and print the Content.

2.2 Access User acknowledges that the Site or any portion thereof, including associated report formats, screen displays, and menu features, and all derivative works are owned by or licensed to EUCLID or its Affiliate(s). The Site or any portion thereof and all copies, versions, and derivative works of the Site or any portion thereof shall remain the sole property of EUCLID or its Affiliate(s) and/or its or their licensors. Access User shall not decompile or otherwise reverse engineer or decode the Applications nor make or permit anyone else to make any copies of the Site or any portion thereof, except as necessary in connection with its authorized use of the Site. Access User shall not allow any third party to access or use the Content or the Site or any portion thereof. Access User shall not take or refrain from taking, directly or indirectly, any action that may in any way lead to the unauthorized dissemination, reproduction, or use of Content or the Site or any portion thereof.

2.3 Access User shall use the Site and the Content only in strict compliance with all applicable laws, rulings and regulations and in a fashion that does not, in the sole judgment of EUCLID, negatively reflect on the goodwill or reputation of EUCLID or its Affiliate(s), and shall take no actions which would cause EUCLID or its Affiliate(s) to be in violation of any laws, rulings or regulations applicable to it. Access User shall comply to the extent applicable with the United States Export Administration regulations, the International Traffic in Arms regulations and any regulation or licenses administered by the Department of Treasury's Office of Foreign Assets Control.

2.4 Any access to or use of the Site and/or the Content that is inconsistent with the terms herein is unauthorized and strictly prohibited without the express prior written consent of EUCLID.

2.5 Documents contained on the Site are copies of originals held by the Owner. In any instance where conflicting information is found between the documents on the Site and the originals, the original documents will control. The presence of project information and/or documents on the Site in no way obligates the Owner or the Owner's licensees to provide additional or updated bidding documents released as addenda to EUCLID.

## 3. PROPRIETARY RIGHTS

3.1 Proprietary Rights. Title and ownership rights to the Drawings including copyrights, mask work rights, patents, trademarks, trade secrets, and other intellectual property rights appurtenant thereto, as well as all copies thereof reside and shall remain in the Owner. The Drawings embody the proprietary and trade secret information of the Owner, who owns the copyrights therein. Any copies of the Drawings made by the Access User shall bear the proprietary markings of Owner borne by the copies transmitted to Access User and in the same form and location as the original. Access User may not alter the display of any Marks in any manner.

## 4. TYPES OF ACCESS

4.1 Access User's access to Site will be limited to the type of access and the number of branch offices (and with respect to the "takeoff" software functionality only, number of users) allowed based on the type of membership or upgrad e established for the Access User at the time of Access User's registration or subsequent upgrade or addition of Access User location licenses. Each paid upgrade to IBuild's Plans Online entitles the Access User to one (1) location license to the Site. A location license is defined as a single office location with potentially multiple employee users; additional office location licenses are offered at additional fees.

## 5. USER RESPONSIBILITIES

5.1 Access User is responsible for (a) acquiring, installing, and maintaining computer equipment and computer software programs at its premises compatible with and as necessary to access, communicate with and use the Site. All fees associated with these items are the responsibility of the Access User.

## 6. FEES AND PAYMENT

6.1 No fees are incurred during the Trial Period, if any. Membership upgrade fees and applicable "takeoff" software functionality user fees, if any, are due upon registration. Each paid upgrade fee to the Site entitles the Access User to one (1) location license (see section 4.1 above) to the Site. Access User agrees to pay all fees at the rates in effect when the

charges were incurred. EUCLID will be entitled to change these fees at anytime by posting new fee rates on-line on the registration screen, such fee change to be effective upon Access User's applicable renewal date. Access User shall pay all amounts due under this Agreement, except those disputed in good faith, upon receipt of the invoice to the address designated on the invoice. Access User shall pay a monthly service charge of 1½% on all such amounts not paid within 30 days of the invoice date.

## 7. TERM, TERMINATION AND RENEWAL

7.1 This Agreement can be terminated by the Access User with 30 days notice to EUCLID prior to the expiration of the then current upgrade period. In the event this Agreement is not terminated in accordance with this Agreement prior to the expiration of the then current upgrade period, this Agreement shall automatically renew upon the expiration of the then current term, and applicable fees shall be automatically charged to the credit card account used during the previous registration process, if available, and, if no credit card information is available, EUCLID shall invoice Access User for the then applicable fees. Access User will be charged the fees at the rates in effect at the time of renewal. No portion of Access User's fees will be refunded upon early termination of this Agreement. If Access User fails to pay any fees or charges due under this Agreement or fails to carry out any other obligation under this Agreement, EUCLID may, at its option, suspend (until the default is cured) or terminate Access User's access to Site.

7.2 No termination of this Agreement or suspension of access to the Site shall release Access User from any obligation to pay EUCLID any amount that has accrued or becomes payable at or prior to the date of termination. Access User shall not be entitled to any refund of any fees paid to EUCLID as a result of a termination. Upon any expiration or termination of this Agreement, all licenses granted to Access User shall terminate and be of no further force or effect.

## 8. WARRANTIES

8.1 Access User represents and warrants that (i) the individual accepting this Agreement is over 18 years of age and has full right and authority to enter into this Agreement on behalf of Access User; (ii) all information provided to EUCLID in connection with this Agreement, including without limitation the registration information, is true, correct, accurate and current. Access User shall promptly provide EUCLID an update if any such information changes, (iii) all Content will only be used by Access User for the intended purposes as stated in this Agreement, and Access User will not infringe the intellectual property rights of a Content Owner, and (iv) Access User is a legal entity in the commercial construction industry and agrees to abide by the terms and conditions contained in this Agreement.

8.2 EUCLID warrants that the Site will perform in all material respects in accordance with the then current published documentation for the Site. As EUCLID's sole responsibility and Access User's exclusive remedy, in the event of any material failure to meet such standards, EUCLID shall make all reasonable efforts to remedy any such failure.

**8.3 OTHER THAN AS EXPRESSLY SET FORTH IN THIS SECTION 8, THE CONTENT AND USE OF THE SITE ARE PROVIDED "AS IS" AND IN THEIR PRESENT STATE AND CONDITION. NO WARRANTY, REPRESENTATION, CONDITION, UNDERTAKING OR TERM, EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE, AS TO THE ACCURACY, CONDITION, QUALITY, AVAILABILITY, DURABILITY, PERFORMANCE, NON-INFRINGEMENT, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OR USE OF THE SITE OR THE CONTENT IS GIVEN OR ASSUMED BY EUCLID OR ITS AFFILIATES, LICENSORS AND SUPPLIERS OR THEIR AGENTS AND ALL SUCH WARRANTIES, REPRESENTATIONS, CONDITIONS, UNDERTAKINGS AND TERMS ARE HEREBY EXCLUDED TO THE FULLEST EXTENT PERMITTED BY LAW. NEITHER EUCLID OR ITS AFFILIATES, LICENSORS OR SUPPLIERS GUARANTEE CONTINUOUS, UNINTERRUPTED, OR SECURE ACCESS TO THE SITE AND ACCESS TO THE SITE MAY BE INTERFERED WITH BY NUMEROUS FACTORS OUTSIDE OF THEIR CONTROL; NEITHER EUCLID NOR ITS AFFILIATES, LICENSORS OR SUPPLIERS SHALL BE LIABLE FOR ANY DAMAGES OF ANY TYPE CAUSED BY SUCH INTERFERENCE.**

## 9. LIMITATION OF LIABILITY

9.1 NEITHER EUCLID NOR ITS AFFILIATES, LICENSORS OR SUPPLIERS SHALL BE LIABLE FOR ANY DAMAGES ARISING OUT OF OR CAUSED, IN WHOLE OR IN PART, BY ANY ERRORS OR OMISSIONS IN ANY CONTENT OR OTHER INFORMATION PROVIDED THROUGH THE SITE OR BY DELAYS IN OR INTERRUPTIONS OF ACCESS TO THE SITE.

**9.2 IN NO EVENT SHALL EUCLID OR ITS AFFILIATES, LICENSORS OR SUPPLIERS BE LIABLE FOR ANY PUNITIVE, EXEMPLARY, INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES OR PENALTIES (INCLUDING LOST PROFITS, LOST SAVINGS AND THE INABILITY TO USE THE SITE, CONTENT OR OTHER INFORMATION CONTAINED ON THE SITE), OR FOR DAMAGES RESULTING FROM PERSONAL INJURY, WRONGFUL DEATH, OR DAMAGES RESULTING FROM THE DELAY, FAILURE OR INTERRUPTION OF THE SITE, NOR FROM BUSINESS INTERRUPTION AND/OR LOSS OF DATA RESULTING FROM ACCESS USER'S USE OR INABILITY TO USE THE SITE, APPLICATIONS OR INFORMATION, WHETHER OR NOT EUCLID OR ITS AFFILIATES, LICENSORS OR SUPPLIERS HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR PENALTIES. THIS LIMITATION OF LIABILITY SHALL BE APPLICABLE ONLY TO THE EXTENT PERMITTED BY LAW IN THE EVENT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF EUCLID OR ITS AFFILIATES, LICENSORS OR SUPPLIERS, OR IN THE EVENT OF PERSONAL INJURY OR DEATH. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, IN NO EVENT SHALL EUCLID'S OR ITS AFFILIATES', LICENSORS' OR SUPPLIERS' LIABILITY FOR ANY DAMAGES (DIRECT OR OTHERWISE) OR PENALTIES OR LOSS UNDER THIS AGREEMENT, REGARDLESS OF THE FORM OF ACTION OR CLAIM, WHETHER IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, EXCEED THE AMOUNTS PAID BY ACCESS USER UNDER THIS AGREEMENT DURING THE 12 MONTHS IMMEDIATELY PRECEDING THE CLAIM, ANY CLAIM FOR DAMAGES OR PENALTIES ABOVE SUCH LIMIT BEING EXPRESSLY WAIVED BY ACCESS USER.**

**9.3 CLAIMS UNDER THIS AGREEMENT NOT MADE WITHIN SIX (6) MONTHS AFTER THE FIRST EVENT GIVING RISE TO A CLAIM SHALL BE DEEMED WAIVED.**

**9.4 ACCESS USER AGREES AND ACKNOWLEDGES THAT THE LIMITATIONS AND EXCLUSIONS OF LIABILITY AND WARRANTY PROVIDED IN THIS AGREEMENT ARE FAIR AND REASONABLE.**

10. INDEMNIFICATION

10.1 Access User shall indemnify and hold EUCLID and its Affiliate(s), licensors, and suppliers harmless from any claims, liabilities or other damages (including reasonable attorneys' fees) resulting from: (i) Access User's unauthorized use of the Site, or the unauthorized use of the Site by anyone permitted by Access User to access the Site, (ii) the actual or alleged infringement of intellectual property rights in connection with Access User's use of any Content beyond the scope of this Agreement, or (iii) Access User's use of the Site or any portion thereof, which use is in violation of any applicable federal, state or local law or regulation.

11. MISCELLANEOUS

11.1 Assignment. Access User may not assign any of its rights or delegate any of its duties under this Agreement, by contract or operation of law, without EUCLID's prior written consent, which consent may be withheld for any reason or no reason, and any attempt to do so shall be void. EUCLID may assign, delegate or transfer all or any part of this agreement or any rights hereunder without the need for any approval or consent from Access User.

11.2 Waiver. The failure of either party to insist upon or enforce strict performance of any provision of this Agreement shall not be construed as a waiver of that or any other right, provision or remedy. No waiver shall be effective unless made in writing and signed by an authorized representative of the waiving party.

11.3 Governing Law and Jurisdiction. This Agreement and any claim arising out of this Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina, excluding its conflict of laws principles. Except as set forth in Section 11.4 below, to the full extent permitted by law, the exclusive

jurisdiction for any action relating to this Agreement shall be a federal or state court in Charlotte, North Carolina, and the parties consent to such jurisdiction and waive and agree not to plead or claim that any such action or proceeding has been brought in an inconvenient forum. Access User agrees to the admissibility of computer records and electronic evidence in any dispute herein.

11.4 Arbitration. Except for the right of either party hereto to apply to a court of competent jurisdiction for an injunction or other interim or equitable relief or provisional remedies to preserve the status quo, or prevent irreparable harm or related to Access User's use of the Site and/or Content in breach of this Agreement pending the selection and confirmation of the arbitrators, and to enforce the award of the arbitrators, any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled exclusively by arbitration in Charlotte, North Carolina (the parties hereby consenting to such venue and waiving and agreeing not to plead or claim that any such action or proceeding has been brought in an inconvenient forum) in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. The award of the arbitrators shall be final and binding, and the parties hereto explicitly waive request for review under Article V Section 1 of the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards. Arbitration shall be conducted by a panel of three members, one member selected by EUCLID, one member selected by Access User and the third member, who shall be chairman, selected by agreement between the other two members. The arbitrators shall be attorneys with a background or training in computer law, computer science, or marketing of computer industry products.

11.5    Written Document. Access User may preserve this contract in written form by printing it for Access User's records, and Access User waives any other requirement that this contract be evidenced by a written document.

11.6 Provisions Severable. If one or more provisions of this Agreement shall be held to be invalid or unenforceable, the remaining provisions shall not be affected thereby.

11.7 Remedies. Any remedies provided herein are non-exclusive.

11.8 Force Majeure. Neither EUCLID nor its Affiliate(s) shall be liable or responsible for any delay or failure in performance if such delay or failure is due to causes beyond their reasonable control, including but not limited to, communications failures, work stoppages or acts of terrorism.

11.9 Survival. Sections 2.2, 3, 7.2, 8.3, 9, 10 and 11 shall survive any termination or expiration of this Agreement for any reason.

11.10 Entire Agreement. This Agreement contains the entire agreement of the parties with respect to the subject matter hereof and supersedes any prior written or oral agreements between them with respect thereto.

11.11 Independent Parties. Nothing in this Agreement or elsewhere shall be construed to make the parties partners, joint venturers, representatives or agents of each other, nor shall either party, directly, indirectly, in writing or otherwise, so represent to any third Person. The parties hereunder are acting in performance of this Agreement as independent contractors engaged in the operation of their own respective businesses.

11.12 Modification. EUCLID reserves the right to modify the terms and conditions of this Agreement or provide additional usage requirements for the Site or Content in its sole discretion at any time by posting a revised version hereof or by otherwise making such revised terms available to Access User for review. Any such modifications will supersede all prior versions after the revised version has been posted or otherwise made available as described above and shall be effective as to subsequent use by Access User upon Access User's continued use of the Site, which continued use constitutes Access User's agreement to the revision. Access User has the right to terminate this Agreement by notice to EUCLID at any time after Access User receives notification of any such modification.

**ACCEPT**                                    **DECLINE**

# EXHIBIT C

This Access User Agreement (the "Agreement") is entered into by and between Carolinas AGC, Inc. (CAGC), and the end-user of the Site (as defined below). YOUR USE OF SITE IS SUBJECT TO THE TERMS AND CONDITIONS SET FORTH BELOW. BY CLICKING THE **"ACCEPT"** BUTTON BELOW, YOU AGREE TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT. IF YOU DO NOT AGREE TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, CLICK THE **"DECLINE"** BUTTON BELOW.

This Agreement provides the terms and conditions pursuant to which Access User (as defined below), for good and valuable consideration the receipt and sufficiency of which are acknowledged, is permitted to access and use certain computer and information systems maintained by or on behalf of CAGC or its Affiliates.

1.DEFINITIONS

Defined terms used herein shall have the meanings ascribed to them in this Section 1.

"Access User" or "You" means you individually and your employer, where applicable, which you hereby assert you have authority to bind.

"Carolinas AGC" or "CAGC" means Carolinas AGC, Inc.

"Affiliate(s)" means any now existing or future direct or indirect subsidiaries or contractual affiliates of CAGC.

"Application" means the software product(s) residing on the Site through which Access User can utilize the Site.

"Content" means the Drawings, Marks and all other information, including but not limited to project location, project details and bid date, which reside on the Site and other information provided via the Site.

"Drawings" is defined as any plans, blueprints, drawings, documentation, specifications, and related design information available via the Site.

"Owner" is defined as the Person that holds legal title and rights to the Drawings.

"Person" means any individual, corporation, limited liability company, partnership, joint venture, association, joint stock company, trust, unincorporated organization or other legal entity.

"Marks" means the marks, logos, service marks, trademarks and trade names appearing on the Site.

"Site" means the web site known as IBuild site located at www.cagc.org, and includes the Applications and the computer and network systems accessed by Access User for the purpose of viewing and obtaining Content.

2. LICENSE AND LICENSE RESTRICTIONS

2.1 Subject to compliance with each of the terms of this Agreement, CAGC agrees to permit Access User to access and use the Site on a limited, revocable, non-exclusive, non-assignable, non-transferable basis solely for the purpose of obtaining Content for facilitating the prequalifications and bidding processes and, if selected as the winning bidder, for completing the construction project. Use of the Content is restricted solely to authorized employees of the Access User.Each authorized employee may procure a unique username and password through www.cagc.org. In addition to and notwithstanding anything to the contrary herein, the Content may not in any event be used or be permitted to be used in any manner that is competitive with CAGC's or any Affiliate(s)' distribution of the Content.Access Users that have purchased full membership may retrieve, view, download and print the Content. Other Access Users may retrieve, view, and print the Content related to details only (such as bid date, owners, designers, applicable CSI codes).

2.2 Access User acknowledges that the Site or any portion thereof, including associated report formats, screen displays, and menu features, and all derivative works are owned by or licensed to CAGC or its Affiliate(s).The Site or any portion thereof and all copies, versions, and derivative works of the Site or any portion thereof shall remain the sole property of CAGC or its Affiliate(s) and/or its or their licensors. Access User shall not decompile or otherwise reverse engineer or decode the Applications nor make or permit anyone else to make any copies of the Site or any portion thereof, except as necessary in connection with its authorized use of the Site. Access User shall not allow any third party to access or use the Content or the Site or any portion thereof.Access User shall not take directly or indirectly, any action that may in any way lead to the unauthorized dissemination, reproduction, or use of Content or the Site or any portion thereof. Access User is responsible for maintaining the confidentiality of the Account User's electronic account, including password, and controlling access to the account. Access User assumes responsibility for all use occurring under the user's account login and agrees to notify CAGC immediately if Access User becomes aware of any unauthorized access of the account, stolen login information, or other breach of security.

2.3 Access User shall use the Site and the Content only in strict compliance with all applicable laws, rulings and regulations and in a fashion that does not, in the sole judgment of CAGC, negatively reflect on the goodwill or reputation of CAGC or its Affiliate(s), and shall take no actions which would cause CAGC or its Affiliate(s) to be in violation of any laws, rulings or regulations applicable to it. Access User shall comply to the extent applicable with the United States Export Administration regulations, the International Traffic in Arms regulations and any regulation or licenses administered by the Department of Treasury's Office of Foreign Assets Control.

2.4 Any access to or use of the Site and/or the Content that is inconsistent with the terms herein is unauthorized and strictly prohibited without the express prior written consent of CAGC.

2.5 Documents contained on the Site are copies of originals held by the Owner. In any instance where conflicting information is found between the documents on the Site and the originals, the original documents will control. The presence of project information and/or documents on the Site in no way obligates the Owner or the Owner's licensees to provide additional or updated bidding documents released as addenda to CAGC.

## 3. PROPRIETARY RIGHTS

3.1 Proprietary Rights.Title and ownership rights to the Drawings including copyrights, mask work rights, patents, trademarks, trade secrets, and other intellectual property rights appurtenant thereto, as well as all copies thereof reside and shall remain in the Owner.The Drawings embody the proprietary and trade secret information of the Owner, who owns the copyrights therein.Any copies of the Drawings made by the Access User shall bear the proprietary markings of Owner borne by the copies transmitted to Access User and in the same form and location as the original.Access User may not alter the display of any Marks in any manner.

## 4. TYPES OF ACCESS

4.1 Access User's access to Site will be limited to the type of access and the number of branch offices (and with respect to the "takeoff" software functionality only, number of users) allowed based on the type of membership or upgrade or access established for the Access User at the time of Access User's registration or subsequent upgrade or addition of Access User location licenses.Each paid upgrade to IBuild's Plans Online entitles the Access User to one (1) location license to the Site. A location license is defined as a single office location with potentially multiple employee users; additional office location licenses are offered at additional fees.

## 5. USER RESPONSIBILITIES

5.1 Access User is responsible for acquiring, installing, and maintaining computer equipment and computer software programs at its premises compatible with and as necessary to access, communicate with, and use the Site. All fees associated with these items are the responsibility of the Access User.

## 6. FEES AND PAYMENT

6.1 No fees are incurred during the Trial Period, if any. Membership upgrade fees and applicable "takeoff" software functionality user fees, if any, are due upon registration.Each paid upgrade fee to the Site entitles the Access User to one (1) location license (see section 4.1 above) to the Site. Access User agrees to pay all fees at the rates in effect when the charges were incurred. CAGC will be entitled to change these fees at anytime by posting new fee rates on-line on the registration screen, such fee change to be effective upon Access User's applicable renewal date. Access User shall pay all amounts due under this Agreement, except those disputed in good faith, upon receipt of the invoice to the address designated on the invoice. Access User shall pay a monthly service charge of 1½% on all such amounts not paid within 30 days of the invoice date.

## 7. TERM, TERMINATION AND RENEWAL

7.1 For Members of CAGC, this Agreement can be terminated by the Access User with 30 days notice to CAGC prior to the expiration of the then current membership period. In the event this Agreement is not terminated in accordance with this Agreement prior to the expiration of the then current upgrade period, this Agreement shall automatically renew upon the expiration of the then current term, and applicable fees shall be automatically charged to the credit card account used during the previous registration process, if available, and, if no credit card information is available, CAGC shall invoice Access User for the then applicable fees.Access User will be charged the fees at the rates in effect at the time of renewal. No portion of Access User's fees will be refunded upon early termination of this Agreement.If Access User fails to pay any fees or charges due under this Agreement or fails to carry out any other obligation under this Agreement, CAGC may, at its option, suspend (until the default is cured) or terminate Access User's access to Site.

7.2 No termination of this Agreement or suspension of access to the Site shall release Access User from any obligation to pay CAGC any amount that has accrued or becomes payable at or prior to the date of termination. Access User shall not be entitled to any refund of any fees paid to CAGC as a result of a termination.Upon any expiration or termination of this Agreement, all licenses granted to Access User shall terminate and be of no further force or effect.

7.3 CAGC may provide access to prospective users who agree to these terms of access for a term of 14 days, which may be extended or terminated at any time at the discretion of CAGC.

7.4 CAGC reserves the right to terminate this Agreement at any time for all Access Users who use the Site on a free or courtesy basis. This includes, but is not limited to, Architects, Engineers, Owners, approving agencies, nonmember Invitation-Access project invited bidders, nonmember state DOT highway letting bidders, courtesy-access organizations, and schools.

7.5 For Schools, a single password shall be issued upon request. This password to the Site is valid for one semester only and may be used on an unlimited basis for all enrolled students. This Agreement shall terminate automatically at the end of the semester.

## 8. WARRANTIES

8.1 Access User represents and warrants that (i) the individual accepting this Agreement is over 18 years of age and has full right and authority to enter into this Agreement on behalf of Access User; (ii) all information provided to CAGC in connection with this Agreement, including without limitation the registration information, is true, correct, accurate and current.Access User shall promptly provide CAGC an update if any such information changes, (iii) all Content will only be used by Access User for the intended purposes as stated in this Agreement, and Access User will not infringe the intellectual property rights of a Content Owner, and (iv) Access User is a legal entity in the commercial construction industry and agrees to abide by the terms and conditions contained in this Agreement.

8.2 CAGC warrants that the Site will perform in all material respects in accordance with the then current published documentation for the Site. As CAGC's sole responsibility and Access User's exclusive remedy, in the event of any material failure to meet such standards, CAGC shall make all reasonable efforts to remedy any such failure.

8.3 OTHER THAN AS EXPRESSLY SET FORTH IN THIS SECTION 8, THE CONTENT AND USE OF THE SITE ARE PROVIDED "AS IS" AND IN THEIR PRESENT STATE AND CONDITION.NO WARRANTY, REPRESENTATION, CONDITION, UNDERTAKING OR TERM, EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE, AS TO THE ACCURACY, CONDITION, QUALITY, AVAILABILITY, DURABILITY, PERFORMANCE, NON-INFRINGEMENT, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OR USE OF THE SITE OR THE CONTENT IS GIVEN OR ASSUMED BY CAGC OR ITS AFFILIATES, LICENSORS AND SUPPLIERS OR THEIR AGENTS AND ALL SUCH WARRANTIES, REPRESENTATIONS, CONDITIONS, UNDERTAKINGS AND TERMS ARE HEREBY EXCLUDED TO THE FULLEST EXTENT PERMITTED BY LAW. NEITHER CAGC OR ITS AFFILIATES, LICENSORS OR SUPPLIERS GUARANTEE CONTINUOUS, UNINTERRUPTED, OR SECURE ACCESS TO THE SITE AND ACCESS TO THE SITE MAY BE INTERFERED WITH BY NUMEROUS FACTORS OUTSIDE OF THEIR CONTROL; NEITHER CAGC NOR ITS AFFILIATES, LICENSORS OR SUPPLIERS SHALL BE LIABLE FOR ANY DAMAGES OF ANY TYPE CAUSED BY SUCH INTERFERENCE.

9.LIMITATION OF LIABILITY

9.1 NEITHER CAGC NOR ITS AFFILIATES, LICENSORS OR SUPPLIERS SHALL BE LIABLE FOR ANY DAMAGES ARISING OUT OF OR CAUSED, IN WHOLE OR IN PART, BY ANY ERRORS OR OMISSIONS IN ANY CONTENT OR OTHER INFORMATION PROVIDED THROUGH THE SITE OR BY DELAYS IN OR INTERRUPTIONS OF ACCESS TO THE SITE.

9.2 IN NO EVENT SHALL CAGC OR ITS AFFILIATES, LICENSORS OR SUPPLIERS BE LIABLE FOR ANY PUNITIVE, EXEMPLARY, INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES OR PENALTIES (INCLUDING LOST PROFITS, LOST SAVINGS AND THE INABILITY TO USE THE SITE, CONTENT OR OTHER INFORMATION CONTAINED ON THE SITE), OR FOR DAMAGES RESULTING FROM PERSONAL INJURY, WRONGFUL DEATH, OR DAMAGES RESULTING FROM THE DELAY, FAILURE OR INTERRUPTION OF THE SITE, NOR FROM BUSINESS INTERRUPTION AND/OR LOSS OF DATA RESULTING FROM ACCESS USER'S USE OR INABILITY TO USE THE SITE, APPLICATIONS OR INFORMATION, WHETHER OR NOT CAGC OR ITS AFFILIATES, LICENSORS OR SUPPLIERS HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR PENALTIES. THIS LIMITATION OF LIABILITY SHALL BE APPLICABLE ONLY TO THE EXTENT PERMITTED BY LAW IN THE EVENT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF CAGC OR ITS AFFILIATES, LICENSORS OR SUPPLIERS, OR IN THE EVENT OF PERSONAL INJURY OR DEATH. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, IN NO EVENT SHALL CAGC'S OR ITS AFFILIATES', LICENSORS' OR SUPPLIERS' LIABILITY FOR ANY DAMAGES (DIRECT OR OTHERWISE) OR PENALTIES OR LOSS UNDER THIS AGREEMENT, REGARDLESS OF THE FORM OF ACTION OR CLAIM, WHETHER IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, EXCEED THE AMOUNTS PAID BY ACCESS USER UNDER THIS AGREEMENT DURING THE 12 MONTHS IMMEDIATELY PRECEDING THE CLAIM, ANY CLAIM FOR DAMAGES OR PENALTIES ABOVE SUCH LIMIT BEING EXPRESSLY WAIVED BY ACCESS USER.

9.3 CLAIMS UNDER THIS AGREEMENT NOT MADE WITHIN SIX (6) MONTHS AFTER THE FIRST EVENT GIVING RISE TO A CLAIM SHALL BE DEEMED WAIVED.

9.4 ACCESS USER AGREES AND ACKNOWLEDGES THAT THE LIMITATIONS AND EXCLUSIONS OF LIABILITY AND WARRANTY PROVIDED IN THIS AGREEMENT ARE FAIR AND REASONABLE.

10. INDEMNIFICATION

10.1 Access User shall indemnify and hold CAGC and its Affiliate(s), licensors, and suppliers harmless from any claims, liabilities or other damages (including reasonable attorneys' fees) resulting from: (i) Access User's unauthorized use of the Site, or the unauthorized use of the Site by anyone permitted by Access User to access the Site, (ii) the actual or alleged infringement of intellectual property rights in connection with Access User's use of any Content beyond the scope of this Agreement, or (iii) Access User's use of the Site or any portion thereof, which use is in violation of any applicable federal, state or local law or regulation.

11. MISCELLANEOUS

11.1 Assignment. Access User may not assign any of its rights or delegate any of its duties under this Agreement, by contract or operation of law, without CAGC's prior written consent, which consent may be withheld for any reason or no reason, and any attempt to do so shall be void. CAGC may assign, delegate or transfer all or any part of this agreement or any rights hereunder without the need for any approval or consent from Access User.

11.2 Waiver. The failure of either party to insist upon or enforce strict performance of any provision of this Agreement shall not be construed as a waiver of that or any other right, provision or remedy. No waiver shall be effective unless made in writing and signed by an authorized representative of the waiving party.

11.3 Governing Law and Jurisdiction. This Agreement and any claim arising out of this Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina, excluding its conflict of laws principles. Except as set forth in Section 11.4 below, to the full extent permitted by law, the exclusive jurisdiction for any action relating to this Agreement shall be a federal or state court in Charlotte, North Carolina, and the parties consent to such jurisdiction and waive and agree not to plead or claim that any such action or proceeding has been brought in an inconvenient forum. Access User agrees to the admissibility of computer records and electronic evidence in any dispute herein.

11.4 Arbitration.Except for the right of either party hereto to apply to a court of competent jurisdiction for an injunction or other interim or equitable relief or provisional remedies to preserve the status quo, or prevent irreparable harm, or related to Access User's use of the Site and/or Content in breach of this Agreement pending the selection and confirmation of the arbitrators, and to enforce the award of the arbitrators, any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled exclusively by arbitration in Charlotte, North Carolina (the parties hereby consenting to such venue and waiving and agreeing not to plead or claim that any such action or proceeding has been brought in an inconvenient forum) in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. The award of the arbitrators shall be final and binding, and the parties hereto explicitly waive request for review under Article V Section 1 of the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards. Arbitration shall be conducted by a panel of three members, one member selected by CAGC, one member selected by Access User and the third member, who shall be chairman, selected by agreement between the other two members. The arbitrators shall be attorneys with a background or training in computer law, computer science, or marketing of computer industry products.

11.5 Written Document.Access User may preserve this contract in written form by printing it for Access User's records, and Access User waives any other requirement that this contract be evidenced by a written document.

11.6 Provisions Severable. If one or more provisions of this Agreement shall be held to be invalid or unenforceable, the remaining provisions shall not be affected thereby.

11.7 Remedies. Any remedies provided herein are non-exclusive.

11.8 Force Majeure. Neither CAGC nor its Affiliate(s) shall be liable or responsible for any delay or failure in performance if such delay or failure is due to causes beyond their reasonable control, including but not limited to, communications failures, work stoppages or acts of terrorism.

11.9 Survival.Sections 2.2, 3, 7, 8.3, 9, 10 and 11 shall survive any termination or expiration of this Agreement for any reason.

11.10 Entire Agreement. This Agreement contains the entire agreement of the parties with respect to the subject matter hereof and supersedes any prior written or oral agreements between them with respect thereto.

11.11 Independent Parties. Nothing in this Agreement or elsewhere shall be construed to make the parties partners, joint venturers, representatives or agents of each other, nor shall either party, directly, indirectly, in writing or otherwise, so represent to any third Person.The parties hereunder are acting in performance of this Agreement as independent contractors engaged in the operation of their own respective businesses.

11.12 Modification.CAGC reserves the right to modify the terms and conditions of this Agreement or provide additional usage requirements for the Site or Content in its sole discretion at any time by posting a revised version hereof or by otherwise making such revised terms available to Access User for review.Any such modifications will supersede all prior versions after the revised version has been posted or otherwise made available as described above and shall be effective as to subsequent use by Access User upon Access User's continued use of the Site, which continued use constitutes Access User's agreement to the revision.Access User has the right to terminate this Agreement by notice to CAGC at any time after Access User receives notification of any such modification.

ACCEPT          DECLINE