THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-CV-150

| | | |
|---|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| SHARPE IMAGES, INC., AND NEXTPLANS, LLC, | ) ) ) | |
| Defendants | ) ) | |

**THIS MATTER** is before the Court on Cross Motions for Summary Judgment. The motions are fully briefed and ripe for review. For the reasons stated below, Plaintiff's Motion is **GRANTED** and Defendants' Motion is **DENIED**.

## I. Background

Plaintiff Pennsylvania National Mutual Casualty Insurance Company ("Penn National") entered into a commercial insurance contact ("policy") with Defendant Sharpe Images Inc. ("Sharpe Images"). Defendant Nextplans LLC ("Nextplans") is a wholly-owned subsidiary of Sharpe Images.

A suit against Sharpe Images and Nextplans (referred to collectively as "Sharpe") by CAGC and Euclid (referred to collectively as "CAGC") precipitated the instant declaratory judgment action and counterclaim. CAGC organizes information and provides services for construction companies and contractors. CAGC alleges that Sharpe Images, Nextplans and another party conspired with Goodrich Hendry to gain entry to CAGC's proprietary "online plan

1

room" for purposes inconsistent with the website's user agreement (i.e. giving proprietary information to a competitor of CAGC to create a similar online plan room). Stemming from this conduct, CAGC claims that Sharpe Images, Nextplans and the other parties began to market and advertise the competitor's online plan room, thereby damaging CAGC and wrongfully profiting the competitor.

CAGC brought several causes of action including fraud, a violation of the North Carolina Trade Secret Act, (N.C. Gen Stat. § 66-152 through § 66-157), unfair trade practices (N.C. Gen Stat. § 75-1.1), interference with prospective and economic advantage, quantum meruit and civil conspiracy. After receiving notice of the suit, Sharpe timely notified Penn National of the claims. Penn National denied coverage under the insurance policy, choosing not to defend Sharpe. Sharpe settled the suit alone.

## II.  Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met the initial burden, the nonmoving party must come forward with specific facts demonstrating a genuine issue for trial. *Celotex*, 477 U.S. at 324. A triable issue exits "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party satisfies its initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating, "that there is some metaphysical doubt as to the material facts." *Matsushita Elc. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a

2

Case 3:11-cv-00150-GCM   Document 49   Filed 09/11/12   Page 2 of 10

scintilla of evidence in support of a nonmoving party's position is not sufficient."). Rather, the nonmoving party must, "go beyond the pleadings and by her own affidavits or by the depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (*quoting* Fed. R. Civ. P. 56(e)) (internal citations omitted). The interpretation of an insurance policy is a question of law, properly resolved at summary judgment. *See State Auto Prop. and Cas. Ins. Co. v. Travelers Indem. Co. of Am.*, 343 F.3d 249, 254 (4th Cir. 2003).

The policy at issue in the instant dispute was delivered and written to cover interests in North Carolina. In a diversity action, courts apply choice of law rules for the forum state, and therefore North Carolina insurance law applies. *CACI Int'l, Inc. v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 150, 154-155 (4th Cir. 2009).

### III. Discussion

Penn National seeks a declaratory judgment to determine its obligations to Sharpe. Sharpe's crossclaim alleges breach of contract under the policy for failing to defend Sharpe against CAGC. The Court first considers the declaratory judgment claim, because determination of that claim dictates whether Penn National breached its contractual obligations to Sharpe.

Typically, an insurance policy confers the duty to defend and the duty to indemnify a policy holder in exchange for payment of a premium. *Lozada v. Phoenix Ins. Co.*, 237 F. Supp. 2d 664, 669 (M.D.N.C. 2003). Generally, the insurer's duty to defend a claim is broader than the duty to indemnify, requiring the insurer to defend the insured prior to a determination of liability at trial. *Id.* at 669-70.

When a dispute arises regarding the duty to defend, the insured must initially show that the asserted facts arguably fall within the policy's coverage. *Wm. C. Vick Co. v. Pennslyvania*

*Nat. Mut. Cas. Ins. Co.*, 52 F. Supp. 2d 569, 592 (E.D.N.C. 1999). If the insured meets this burden, then the insurer must show that the policy precludes coverage based on an exclusion. *See id.* "Exclusionary clauses are interpreted narrowly while coverage policies are interpreted broadly to provide the greatest possible protection to the insured." *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 350 S.E.2d 66, 71 (N.C. 1986). Also, where the insurer knows or reasonably could discover facts outside the pleadings that would cover a claim under the policy, these facts may trigger the duty to defend. *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 340 S.E.2d 374, 377 (N.C. 1986). If the insurer fails to defend the insured but later a trial or similar proceeding establishes that the policy covers a particular claim, then the insurer must pay the cost of the insured's defense. *Lozada*, 237 F. Supp. 2d at 670.

North Carolina employs the comparison test to determine if a circumstance arguably falls within the policy's coverage, contrasting the terms of the policy with the facts alleged in the pleadings. *Waste Management*, 340 S.E.2d at 378. Absent fact finding by a court or other body, the Court assumes the facts alleged are true, focusing primarily on the complaint. *See Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 692 S.E.2d 605, 610-11. The Court analyzes the facts as alleged in the complaint, not any and every conceivable version of the facts. *Id.* at 611. Moreover, the Court must not simply recast intentional conduct as negligence. *Kubit v. MAG Mut. Ins. Co.,* 708 S.E.2d 138, 149 (N.C. Ct. App. 2011).

An insurer has a duty to defend where some of the allegations fall within the policy's coverage even if others do not. *Waste Management*, 340 S.E.2d at 378; *Washington Housing Auth. v. North Carolina Housing Auth. Risk Retention Pool*, 502 S.E.2d 626, 629 (N.C. Ct. App. 1998). But, if the policy does not arguably cover the facts asserted, then the insurer possess no duty to defend the claim. *Waste Management*, 340 S.E.2d at 378.

**A. Penn National Had No Duty to Defend Nextplans, a Limited Liability Corporation, Absent Sharpe's Claims Being Covered under the Policy**

In determining the parties covered by a particular policy, courts first look to the language of the policy. *See Federal Ins. Co. v. Firemen's Ins. Co. of Washington D.C.*, 769 F. Supp. 2d 865, 872 (D.Md. 2011). Typically, where the language of a contract reads clearly and unambiguously, the Court must enforce the contract as written. *Allstate Ins. Co. v. Runyon Chatteron*, 518 S.E.2d 814, 816 (N.C. Ct. App. 1999).

Here, the policy as written only provides coverage for Sharpe Images, clearly and unambiguously excluding Nextplans as a limited liability corporation. First, only Sharpe Image's name appears on the declarations page that lists the insured parties. Second, an endorsement provides that an insured entity under the policy is "[a]ny organization or subsidiary thereof, other than a partnership, joint venture or limited liability corporation . . . of which you own a financial interest of more than 50 percent of the voting stock on the date of this endorsement." (Doc. 1-1, p. 49). Third, the policy denies coverage to any "limited liability company . . . not shown as a Named Insured in the Declarations." (Doc. 1-1, p. 49). Based on these considerations, the policy's language obligates Penn National to defend the underlying action only if it arguably covers the claims related to Sharpe Images.[1]

**B. The Intentional Conduct Alleged in the Pleadings Cannot Constitute an "Occurrence" for "Property Damage" and "Bodily Injury" Claims**

Here, the policy states that "bodily injury" or "property damage" claims require an

---

[1] *See Federal Ins. Co.*, 769 F. Supp. 2d at 873. ("Though the claims against [the LLC] may be uncovered . . . under the policy, there is a possibility that claims against [the named insured] (indisputably insured by the [policy]) are covered, thus triggering the [insurer's] obligation to defend the entire suit.").

5

"occurrence" to trigger the duty to defend. (Doc. 1-1, p. 90 (A)(1)(b)(1)).  In an exclusion and because the policy defines "occurrence" as an "accident," Penn National restricted "occurrences" to "unexpected and unintended [events] from the viewpoint of the insured." (Doc. 1-1, p. 92); (Doc. 1-1, p. 102); *Waste Management*, 340 S.E.2d at 695.

"[A]n injury that is intentional or substantially certain to be the result of an intentional act is not an 'accident.'" *Am. Mfrs. Mut. Ins. Co. v. Morgan*, 556 S.E.2d 25, 28 (N.C. Ct. App. 2001).  Therefore, "[a]n intentional act . . . intended to cause injury or substantially certain to result in injury . . . is not an occurrence under the policy definitions." *Henderson v. U.S. Fid. Guar. Co.*, 476 S.E.2d 459, 464 (N.C. Ct. App. 1996).

The underlying complaint alleges that Goodrich Henry acted as an agent of Sharpe to access proprietary information from CAGC's online plan room, "knowingly misappropriat[ing] . . . trade secrets," and subsequently "post[ing] such content and information on [the competitor's online plan room], knowing such content and information was derived from CAGC."  (Doc. 1-2, p. 11, ¶ 31);  (Doc. 1-2, p. 21).  Additionally, the complaint alleges that Sharpe "intended [C]AGC to rely on misrepresentations made through Goodrich Hendry, and perhaps other unknown agents."  (Doc. 1-2, p. 18, ¶ 53).  The insurance policy excludes these events as an "occurrence" because they do not stem from an "accident."  Thus, the Court finds that Penn National possessed no duty to defend Sharpe based on "bodily injury" or "property damage" claims.

**C. The "Advertising Injury" Stems from Knowing and Intentional Conduct, Barring Coverage under Exclusions**

Sharpe argues[2] that it should recover from Penn National because the claims regarding unfair trade practices and interference with prospective and economic advantage involve an "advertising injury." "Advertising injury," as defined in the policy, does not require an "occurrence." Instead, it must be "caused by an offense" in the process of marketing one's goods. (Doc. 1-1, p. 90, (A)(1)(b)). Turning to the policy's specific language, two "offenses" conceivably fit the instant context of advertising injury. The first relates to "oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." (Doc. 1-1, p. 100 (F)(1)(a)). The second refers to "misappropriation of advertising ideas or styles of doing business." (Doc. 1-1, p. 100 (F)(1)(c)).

In CAGC's Complaint, both the unfair trade practices and interference with prospective and economic advantage claims incorporate previous paragraphs discussing the "advertising injury." The Complaint alleges that Sharpe made "knowing" misrepresentations on its website and that its statements[3] in promotional material[4] were "made knowingly" "[i]n an attempt to

---

[2] Sharpe seems to argue contradictory positions in regards to "advertising injury." First, Sharpe argues that CAGC suffered an "advertising injury," triggering Penn National's duty to defend. But, for CAGC to suffer an actionable injury, the content of Sharpe's promotional materials would have to be inaccurate to cause an "offense." See *Harleysville*, 692 S.E.2d 605 at 622. ("[T]here is . . . a distinction between being injured by an advertisement and being wrongfully injured by an advertisement. [When wrongfully harmed,] a plaintiff may recover for the damages suffered. . . . The remedy for the injury inflicted by a truthful advertisement is found in the marketplace, not in the courthouse.") Conversely, Sharpe argues that the contents of its promotional campaign "are accurate; the figures are not false." (Doc. 42, p.15). So, either CAGC suffered no injury from advertising caused by an offense, leaving Sharpe with no "advertising injury" claim, or alternatively, inaccurate statements from advertising caused CAGC injury. For the benefit of Sharpe, the Court considers that the statements are inaccurate and CAGC's allegations are true.

[3] In the underlying complaint CAGC alleges Sharpe's promotional materials contained numerous inaccurate statements related to Sharpe's online plan room. Additionally, CAGC claims that Sharpe made a false statement about CAGC's online plan room. CAGC states that Sharpe "falsely represent[ed] that CAGC's upgraded membership cost is $2000." (Doc. 1-2, p.13).

[4] Sharpe's promotional materials do not refer to CAGC directly. Instead, Sharpe refers to "the other guy." However, many of the parties receiving Sharpe's advertisement would likely understand "the other guy" to mean CAGC. In addition to CAGC being a major competitor in the area, the contents of the materials referenced specific qualities and information about CAGC. Also, Sharpe directed the materials at CAGC customers. Similarly in *Harleysville*, the court entertained false advertising claims where the competitor was not mentioned and its product was to referred to simply as "topical insect repellants." *See Harleysville*, 692 S.E.2d 605 at 622.

7

profit from the unlawful and improper conduct." (Doc. 1-2, p. 13, ¶ 38-9). Regarding unfair trade practices, the complaint states that Sharpe "st[ole] proprietary content" and created a promotional and advertising campaign "intended to deceive such persons and harm CAGC." (Doc. 1-2, p. 22 ¶ 74). In reference to interference with prospective and economic advantage, the Complaint states that Sharpe, through "intentional and malicious acts and conduct, including their misappropriation of CAGC's proprietary information and trade secrets and use of a false and misleading marketing and promotional campaign, . . .intentionally induced prospective and actual members" from using CAGC's services. (Doc. 1-2, p. 25, ¶ 91).

CAGC emphasizes the injury suffered as a result of Sharpe's marketing and promotional campaign. Although not the predominate injury alleged, an advertising injury arguably arose[5] based on the wording of the Complaint. While the facts in the Complaint taken as true arguably allude to an advertising injury, the Complaint clearly alleges conduct designed to intentionally harm CAGC and thus places these allegations squarely within policy exclusion[6] p(2). Exclusion p(2) denies coverage for "advertising injury," written or oral, committed "by or at the direction of the insured with knowledge of its falsity." (Doc. 1-1, p. 95)

---

[5] Penn National directs the court's attention to *Perdue Farms Inc. v. Nat'l Union Fire Ins. Co.*, 2005 U.S. App. LEXIS 10136, a case involving theft of a trade secret and an injury from advertising. Penn National correctly asserts that an "advertising injury" does not arise simply because a party advertises a product derived unlawfully from another's proprietary information. *Perdue Farms Inc. v. Nat'l Union Fire Ins. Co.*, 197 F. Supp. 2d 370, 379 (D.Md. 2002) 379. This proposition would apply to our matter. Nonetheless, the decisions made by the reviewing court in that case are distinguishable because they were based on earlier fact-finders who concluded that the damages awarded did not relate to an advertising injury.

[6] Based upon the language in the pleadings, other exclusions in the policy apply in addition to p(2). For example, subsection (q)(6) of the endorsement bars coverage for advertising injury "arising out of the infringement of . . . trade secret." (Doc. 1-1, p. 60). Based on the pleadings, without the theft of a trade secret, no advertising injury would have occurred. Also, (7) of the endorsement precludes advertising injury "caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict . . . 'Advertising Injury'" (Doc. 1-1, p. 60). Further, a general exclusion under section B of the endorsement excludes coverage for "bodily injury, property damage, personal injury or advertising injury arising directly or indirectly out of any action or omission that violates or is alleged to violate" "any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information." (Doc. 1-1 p. 60).

8

Sharpe cites non-controlling case law[7] to advance its position that "insurer Penn National had a duty to defend the claim because there was coverage because the CAGC unfair trade practice claim on the Marketing Materials could be potentially be [sic] proved without intent or knowledge of it falsity." (Doc. 42, p. 18). Importantly, this assertion neglects that the Complaint against Sharpe solely alleges intentional conduct designed to injure CAGC. No fact in the complaint mentions or implies negligent conduct.

The Complaint, taken as true, alleges that Sharpe knowingly and intentionally used false and misleading advertising materials to harm CAGC. Thus, the Complaint triggers policy exclusion p(2) and Penn National had no duty to defendant Sharpe under the "advertising injury" provision.

**D. Sharpe's Assertion of Ambiguity Within the Term "Falsity" Fails.**

Words undefined in the policy and nontechnical terms take their ordinary meaning. *Waste Management*, 340 S.E.2d at 379. Ambiguity does not exist simply because the parties contest a provision's meaning. *Allstate Ins. Co.*, 518 S.E.2d at 816. Where ambiguity or doubt exists, the law favors a finding of coverage because the insurer typically chooses the language of the policy. *Lozada*, 237 F. Supp. 2d at 670. An ambiguous provision is one where the language, in the view of the whole contract, is reasonably suceptible to multiple interpretations. *Harleysville,* 692 S.E.2d at 612.

Sharpe argues that exclusion p(2) should not exclude the conduct alleged in the complaint because the term "falsity," undefined in the policy, is ambiguous in the context of the

---

[7]*Solo Cup Co. v. Federal Ins. Co.*, 619 F.2d 1178 (7th Cir. 1985); *Safeguard v. Federal Ins. Co.*, 766 F. Supp. 324 (E.D.Pa. 1991); *Sun Elec. Corp. v. St. Paul Fire & Marine Ins. Co.*, 1995 WL 270230 (N.D.Ill. May 4, 1995).

policy and thus should take a definition favorable to Sharpe.[8]  However, the Fourth Circuit addressed this issue in a previous insurance case. See *State Auto,* 343 F.3d at 260.  The Circuit stated that "[b]ecause the . . . policy fails to define the policy term 'falsity,' we must define the term in a manner consistent with the context in which it is used and the meaning accorded in ordinary speech." *Id.* "[F]alse is generally understood to mean untrue or failing to correspond to a set of known facts." *Id.* (quoting *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1195 (11th Cir. 2002)).  Defining "falsity" by its ordinary meaning renders exclusion p(2) clear and unambiguous.  Sharpe's argument regarding ambiguity is unavailing.

## Conclusion

CAGC's underlying Complaint alleged intentional conduct that did not trigger Penn National's duty to defend under the policy at issue.  As a result, no breach of contract occurred.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment reggarding the declaratory judgment claim is **GRANTED**. Defendant's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

Signed: September 11, 2012

Graham C. Mullen
United States District Judge

---

[8]Sharpe cites *State Auto* to demonstrate that the term "false" possesses inherent ambiguity.  While the court determined that the term may have been ambiguous as it relates to an allegation of purely misleading advertising, the court specifically noted that no party asserted "false" advertising as in our case.  See *State Auto,* 343 F.3d at 260.